437 So.2d 1330 (1983)
Ex parte Samuel YARBER.
(Re: Samuel Yarber v. State of Alabama.)
81-242.
Supreme Court of Alabama.
March 4, 1983.
Rehearing Denied June 24, 1983.
*1331 Frederick A. Erben of Beddow, Fullan & Vowell, Birmingham, and H. Powell Lipscomb, III of Lipscomb & Lipscomb, Birmingham, for petitioner.
Charles A. Graddick, Atty. Gen. and Thomas R. Allison, Asst. Atty. Gen., for respondent.
PER CURIAM.
Samuel Yarber (defendant) petitions this court to review the decision of the Court of Criminal Appeals which affirmed his conviction following his second trial for murder. We granted certiorari to review two issues. The first is: Whether defendant can compel the enforcement of a negotiated plea agreement which had been broken by the state. The second is: Whether defendant's conviction rests on the uncorroborated testimony of an accomplice in violation of Code 1975, § 12-21-222. After reviewing the facts and applicable law, we conclude that defendant can compel the tender of the plea agreement to the trial court, as we explain below. On the other issue, we quash certiorari as having been improvidently granted.
*1332 The Court of Criminal Appeals, in its opinion,[1] sets out the facts surrounding the crime. Our review is concerned solely with the issue of the enforceability of the plea agreement. The Court of Criminal Appeals gave the following treatment to this issue.
VI
Appellant alleges as his final contention of error that a plea bargaining agreement had been reached with the State in this case, but that at the last moment the district attorney refused to abide by the agreement and the case was brought to trial.
No guilty plea was ever entered in the case. The record fails to show that appellant ever did anything in reliance on an agreement made with the prosecution. There was no written plea bargaining agreement ever signed by appellant or any of the attorneys. From the record all the negotiations surrounding a possible settlement of the case were verbal. We conclude that Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), does not apply in the instant case.
Pursuant to Rule 39(k), Alabama Rules of Appellate Procedure, defendant requested on his application for rehearing that the Court of Criminal Appeals consider facts in addition to those stated in its opinion. That court denied defendant's request, so he now presents the same additional facts to us for our review. Under Rule 39(k), A.R.A.P., we find the additional facts to be correct, and we consider them in this opinion.
The additional facts come from a pretrial motion hearing, one object of which was to compel the enforcement of the broken plea agreement. Frederick A. Erben, Esq., represented the defendant at trial and on appeal. At the pretrial motion hearing, Erben called Charles Barton Dunn, Esq., Assistant District Attorney for Jefferson County, to testify. Dunn was assigned to try defendant's case for the state. Erben and Dunn had negotiated the plea agreement.
Dunn gave the following testimony. One Friday in April 1981, Erben and Dunn discussed the possibility of a negotiated plea in defendant's case. Dunn felt the state had the problem of having to prove its case with the testimony of Danny Ray Mylar.[2] Dunn explained that he considered Mylar's testimony to be substantially unreliable and lacking in credibility. Dunn, therefore, thought a negotiated plea to be advisable. He and Erben discussed a tentative agreement which entailed dismissing one indictment, amending the other indictment from murder to manslaughter, and allowing defendant to plead guilty and receive a sentence equal to the time he had already served while incarcerated.
Initially, Dunn told Erben that the agreement could not be confirmed until he received the approval of Earl C. Morgan, Esq., with whom final authority rested in the Jefferson County District Attorney's Office. Dunn spoke to Morgan and recommended the agreement. Morgan advised Dunn that the agreement sounded good, but that he wanted to discuss it with another member of their office. After doing so, Morgan told Dunn he should accept the plea agreement on the agreed upon terms. Thereafter, the following week, Erben met with Dunn at Dunn's office. Dunn informed Erben that he had not yet been able to finalize everything with Morgan. Nevertheless, the two went before Circuit Judge Charles R. Crowder, to whom defendant's case had been assigned. Apparently, an informal and off-the-record discussion took place in which Judge Crowder indicated that he believed he would accept the plea agreement if it were entered before him. Later that day, Dunn received final *1333 approval for the plea agreement from Morgan. Dunn then called Erben and informed him that the agreement was acceptable. The Circuit Court was subsequently advised that the hearing scheduled for the next two days on the pretrial motions was no longer necessary.
Erben and Dunn planned to formally take the plea to Judge Crowder the next day. The next day, however, Dunn could not do so because he became ill. Erben spoke with Dunn by telephone and asked if some member of Dunn's office could appear in court for the plea. Dunn responded that the victim's family should be notified before the plea was taken so that they would not learn of it first in the newspaper. Dunn explained that he wanted to apprise the victim's family of the reason for the plea agreement. Dunn suggested that Erben call Morgan to secure someone else to appear for the plea, and to be certain someone from the district attorney's office spoke to the victim's family. Erben and Dunn next spoke two days later. At that time, Dunn informed Erben that his office had an extended conversation with the victim's family, who expressed opposition to any plea agreement, and, therefore, that the agreement would not be honored.
Erben also testified at the pretrial motion hearing and recounted many of the same facts. Erben added that he conveyed the offer of the negotiated plea to defendant. Defendant accepted it, and Erben then advised Dunn of the acceptance, indicating everything was finalized for the plea. Erben also testified that he and Dunn agreed that the plea was to be taken on that Wednesday morning as planned. As requested by Dunn, Erben called Morgan in an attempt to find someone else to appear in court for the district attorney's office so that the plea could be taken. Erben conveyed Dunn's request that the victim's family be contacted by Morgan. Erben tried unsuccessfully to reach Morgan again that day to learn when the victim's family would be advised of the plea agreement. However, he did reach Morgan the next day and asked if the delay meant Morgan would not honor the agreement. Morgan advised that was not the case, and that the agreement was sound. Erben learned of the agreement's breach on Friday, when he spoke to Dunn. Neither Dunn nor Morgan had stated that the agreement was subject to the acquiescence of the victim's family.
What we have said here is meant in no way as a reflection on the district attorney Mr. Morgan, or his assistant district attorney Mr. Dunn. This court had not previously decided the specific issue involved here. Indeed, the federal appeals court for the circuit of which Alabama is a part had decided against the enforceability of plea bargains before a guilty plea was entered.
At the conclusion of the pretrial motion hearing, the trial court concluded that the parties had, in fact, entered into the plea agreement. Nevertheless, it declined to enforce the agreement, and defendant stood trial. The jury returned a verdict of guilty of murder in the second degree. Defendant received a sentence of twenty years.
Whether a defendant can compel the enforcement of a plea agreement, broken by the state, where he had not yet pleaded guilty or otherwise relied on the agreement to his disadvantage, is a question of first impression before the appellate courts of this state. The United States Supreme Court noted the validity of negotiating pleas in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that Court acknowledged both the desirability and enforceability of a negotiated plea. That Court's consideration of the enforceability of a negotiated plea arose in a setting in which the state violated the agreement after the defendant had pleaded guilty in reliance on it. It has yet to speak to the issue framed under facts similar to those of our present case. Other courts that have considered the present issue are split in their rationale and holding.
*1334 Some courts decline to enforce a negotiated plea where the state has broken the agreement and where the defendant has neither pleaded guilty in reliance on the agreement, nor cooperated with the state to his disadvantage under the agreement. United States v. Aguilera, 654 F.2d 352 (5th Cir.1981); United States v. Ocanas, 628 F.2d 353 (5th Cir.1980); Government of the Virgin Islands v. Scotland, 614 F.2d 360 (3rd Cir.1980); Shields v. State, 374 A.2d 816 (Del.1977), cert. denied, 434 U.S. 893, 98 S.Ct. 271, 54 L.Ed.2d 180 (1977). To varying degrees, the holdings of these cases are based on a limited application of contract law to the problem of a broken plea agreement. Absent a showing of detrimental reliance, they reason, specific performance will not lie to enforce the agreement. Thus, a defendant, who has not pleaded guilty or otherwise detrimentally acted in reliance under the terms of the agreement, cannot compel its enforcement. The Fifth Circuit cases adopt the viewpoint that:
Thus, the realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court.
United States v. Ocanas, 628 F.2d at 358; quoted with approval in United States v. Aguilera, 654 F.2d at 353-4.
We decline to accept the rationale or holdings of these cases. Employing contract law by way of analogy, we cannot conclude that a plea agreement is unenforceable merely because it is tentative in the sense that it is subject to the trial court's approval. The mere fact that a contract is subject, in effect, to the approval of a third-party, does not, by itself, render it unenforceable. For example, a contract for the purchase of realty is not rendered unenforceable because it is subject to the release and approval of the seller's contemplated mortgage. Olen Real Estate and Investment Company v. Zieman & Company, 269 Ala. 106, 110 So.2d 890 (1959).
However, we agree with the proposition that contract law cannot be rigidly applied in deciding whether to enforce a broken plea agreement. "Principles of contract law provide a useful analytical framework, but surely they cannot be blindly incorporated into the criminal law in the area of plea bargaining." United States v. Ocanas, 628 F.2d at 358. Courts enforcing a plea agreement, where defendant has shown no detrimental reliance, have also recognized the limited application contract law has to this problem. Cooper v. United States, 594 F.2d 12 (4th Cir.1978); Kisamore v. State, 286 Md. 654, 409 A.2d 719 (1980). Other compelling principles must be given due consideration.
Chief Justice Burger, speaking for the majority in Santobello v. New York, observed the importance of negotiated pleas:
The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.
Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal *1335 cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See Brady v. United States, 397 U.S. 742, 751-752, 90 S.Ct. 1463, 1470-1471, 25 L.Ed.2d 747 (1970).
Santobello v. New York, 404 U.S. at 260-1, 92 S.Ct. at 498, 30 L.Ed.2d at 432.
Similarly, the Court of Appeals of Maryland also recognized the importance of negotiated pleas.
This Court has recognized that plea bargains "when properly utilized, aid the administration of justice ..." and, "within reason, should be encouraged." State v. Brockman, 277 Md. 687, 693, 357 A.2d 376, 381 (1976). Plea agreements account for the disposition of an overwhelming percentage of all criminal cases, and serve to relieve "the overcrowding of our courts" and to "eliminate many of the risks, uncertainties and practical burdens of trial...." Id. Thus, they "permit the judiciary and prosecution to concentrate their resources on those cases in which they are most needed, and further law enforcement by permitting the State to exchange leniency for information and assistance." Id.

Kisamore v. State, 286 Md. at 656, 409 A.2d at 720.
Negotiated pleas, thus, serve a valuable role in the criminal justice system. If the integrity of that role is to be maintained, certainty must prevail. The state need not enter into a plea agreement. It may choose not to do so, and proceed to trial on any case. The United States Supreme Court states there is no constitutional right to a negotiated plea. Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). However, once the state chooses to make an agreement, it should not be allowed to repudiate that agreement with impunity. State v. Brockman, 277 Md. 687, 357 A.2d 376 (1976) (cited with approval in Kisamore v. State, supra). A contrary result would not encourage a defendant to come to grips with the moral and strategic considerations necessary to accepting a negotiated plea, and pleading guilty, if he knows the very agreement he must consider is subject to unilateral speculation by the state.[3] If we allow the state to dishonor at will the agreements it enters into, the result could only serve to weaken the plea negotiating system. Such a result also is inconsistent with the "honesty and integrity" encouraged by Canon 1, Alabama Code of Professional Responsibility.[4]
The Third Circuit Court of Appeals in Government of the Virgin Islands v. Scotland, supra, held that where the state breaches a plea agreement before the defendant acts in reliance on it, specific performance is denied because the defendant has the adequate remedy of a jury trial. We cannot accept that proposition. We agree with the Third Circuit that the right to a jury trial is an important and fundamental *1336 right. Nevertheless, it may be an inadequate remedy for a defendant seeking to enforce the terms of an agreed upon plea. In so holding, we do not belittle the value of that fundamental right. We merely recognize that the uncertainty of its outcome is likely to make a jury trial less than a meaningful remedy. One commentator observes:
To the defendant, a trial appears risky and unpredictable when compared with the plea bargaining process. Many factors, including limited pretrial discovery, indeterminate questions of credibility, and the uncertainties of jury decisions, make the outcome of a trial unpredictable. In addition, unpredictability is often prevalent in sentencing procedures. Most criminal statutes grant the judge a wide and largely uncontrolled latitude of sentencing discretion. Plea bargaining eliminates many of these uncertainties by providing a predetermined charge and sentence. See Note, supra note 22, at 564.
Note, Plea Bargaining AgreementsRight to Enforcement Derived from Fifth and Sixth Amendments, 3 Western New Eng.L. Rev. 249, 252, N. 24 (1980), citing Note, Plea Bargaining and the Transformation of the Criminal Process, 90 Harv.L.Rev. 564 (1977). There are, undoubtedly, other factors that could be added to the above list.
In its opinion, the Court of Criminal Appeals notes the fact that defendant and the state did not enter into a written plea agreement. We are unaware of any requirement that the agreement be reduced to writing. Regarding negotiated pleas, two commentators have remarked, "[A] plea bargain is a matter of honor between opposing counsel. It is not reduced to writing." Bailey and Rothblatt, Handling Misdemeanor Cases, § 39 (1976). The same is true in our jurisdiction. Although a plea agreement may be reduced to writing, the prevalent custom in Alabama is that such agreements are verbal understandings between the attorneys involved. We point out this to dispel any suggestion that a plea agreement is unenforceable merely because it is unwritten.
Because we have decided that the plea agreement is enforceable, the question which next arises is: What is defendant's remedy on remand? Because the trial court is not bound to accept an agreement between the defense and prosecution, defendant cannot compel the entry of a judgment of guilty coupled with the terms embodied in the plea agreement. Nevertheless, defendant is not without a remedy. Under the posture of the agreement in this case, defendant is entitled to compel the enforcement of that for which he bargainedthat is, the tender of the negotiated plea, with its attendant terms, to the trial court for its consideration. The Court of Criminal Appeals is directed to instruct the trial court to consider the negotiated plea and its terms entered into by the state's counsel and defendant's counsel. As pointed out by the state in its brief, this case has now been pending before the courts of this state for more than seven years. We hope that on remand it will be brought to the conclusion which is so long overdue.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, JONES, EMBRY and ADAMS, JJ., concur.
MADDOX, ALMON, SHORES, and BEATTY, JJ., dissent.
BEATTY, Justice (dissenting):
Even assuming there was a valid plea bargain between Yarber and the district attorney, I believe that before the plea bargain is tendered to the court, the better rule would be either to allow the defendant to withdraw his offer to plead guilty, or to allow the district attorney to change his recommendations. Thus, neither party would be bound until that time. In fact, I believe proposed Rule 14.3, Alabama Rules of Criminal Procedure, contemplates such a *1337 rule of procedure. I am of the opinion that neither party is justified in relying upon the bargain until the trial court approves it; therefore, I must respectfully dissent.
MADDOX, ALMON and SHORES, JJ., concur.
NOTES
[1] Yarber v. State, [MS. October 27, 1981] 437 So.2d 1319 (Ala.Cr.App.1981).
[2] Apparently, Mylar is also known as Miles. Along with Yarber, Mylar also was indicted for the murders.
[3] The Fourth Circuit Court of Appeals upholds the right of a defendant to compel specific performance of a negotiated plea where there has been no detrimental reliance, based on constitutional considerations. That court, speaking through Judge Phillips, perceptively observes that allowing the state to repudiate a plea agreement effectively diminishes the defendant's confidence in his counsel. Such action by the state, that court observes, runs afoul of the state's "fundamental duty to negotiate with scrupulous fairness in seeking guilty pleas." Cooper v. United States, 594 F.2d at 19. See, Note, Plea Bargaining Agreements Right to Enforcement Derived from Fifth and Sixth Amendments, 3 Western New Eng.L.Rev. 249 (1980).
[4] "A lawyer should conduct himself at all times, both personally and professionally, in accordance with the highest standards of honesty and integrity and should cooperate with the state and local bar associations in maintaining such standards." [Emphasis supplied.]