Sheldon Lewis Kresler pled guilty to two indictments for first degree robbery and was sentenced to twenty years' imprisonment on each conviction. The trial judge ordered the two sentences to be served concurrently with each other but consecutive to the unexpired portion of an eighteen-year sentence previously given Kresler in a Montgomery Circuit Court proceeding. On appeal, Kresler claims that the State failed to abide by its negotiated plea agreement with him, and his case should be remanded for resentencing under the terms of the plea bargain.
The record reveals that, prior to the entry of Kresler's guilty pleas, he, his attorney, the assistant District Attorney and the trial court discussed a plea bargain which the State characterized, in open court, as follows:
 "MR. MORGAN [Assistant District Attorney]: Judge, upon his plea of guilty in these two cases that you have numbered, the State would recommend twenty years in each case. We would further recommend that those sentences run concurrently with each other. It's my understanding that defense will ask for a presentence investigation. It's my understanding that sentencing would be set sometime around January the 20th of 1984.
 "It is anticipated that Mr. Kresler, pending the sentencing hearing, would talk to investigators of the Huntsville Police Department for the purpose of *Page 786 
clearing other cases that might have occurred here in Madison County. In the event that such information should lead to the issuance of arrest warrants against other defendants, or in the event that it should clear other cases at that time, at the sentencing hearing, the State would recommend that these two concurrent twenty-year sentences would run concurrently with the unexpired portion of the eighteen-year sentence that this defendant is now serving from Montgomery County, Alabama."
After the prosecution stated the agreement, the following occurred:
 "THE COURT: All right, Mr. Kresler, you've heard what the district attorney has said.
"THE DEFENDANT: Yes, sir.
 "THE COURT: Now, is that your understanding of the discussions your attorneys have had with him —
"THE DEFENDANT: Yes, sir.
"THE COURT: — and also later in my presence?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you have any reservations about that, Mr. Burgess? [Defense Counsel].
 "MR. BURGESS: No, sir, I have no reservations. I think there may be one further thing with regard to the information that Mr. Kresler is to provide the Huntsville authorities: that, in the event this information does not lead to arrest warrants or does not lead to the clearing of cases, the State will have no position with regard to whether these two sentences will run concurrent or consecutive with that in Montgomery.
"THE COURT: All right.
 "Now, for the record so that it's clear, let me try to state for the record what I have told your attorneys in chambers. I will abide by that recommendation if you cooperate fully with the district attorney's office and the law enforcement officials of this county in good faith, and that if you do what they require of you in connection with any warrants that they may issue, which might include trial testimony, I would imagine. That hasn't been discussed, but that's a possibility I suppose, is it not?
"MR. BURGESS: It would be a possibility.
"THE COURT: All right, sir.
 "Now, if you in good faith do that and you assist law enforcement officials in this county in solving other crimes that are presently pending, then I will abide by the recommendation that has been made to me by the district attorney in connection with each of these cases, meaning that you would be sentenced to twenty years in each case, that time would run concurrently in each of these cases, and that further, that time would run concurrently with the sentence that you have received from the Montgomery County Circuit Court.
 "If you should not in good faith cooperate with law enforcement officials, however, I want you to understand that, as far as I'm concerned, you would then be pleading blind, that there would be no recommendation. Mr. Morgan made it clear in chambers that, in that event, he would withdraw his recommendation to the Court, and I have told your attorneys that, in that event, as far as I'm concerned, it would be a blind plea and I would sentence you based on a review of your pre-sentence investigation, any evidence your attorneys might wish to bring to my attention in your behalf, any arguments that they might wish to make bearing on the sentence to be imposed by the Court in mitigation of that sentence.
 "I have told them that if any question should arise about whether you have dealt in good faith with law enforcement officials, that on the date this case is set for sentencing that I would allow them to make an evidentiary showing bearing on that question and that I would deal with you in good faith and with your attorneys in good faith so that you need have no qualms about anybody, especially this Court or in law enforcement in this county, whether it be a deputy sheriff, Huntsville police, or district attorney's *Page 787 
office, dealing with you in good faith. All of us — and I would require that all of us deal with you ethically and in good faith.
 "Now, after all that's been said, do you have any questions about this, Mr. Burgess?
"MR. BURGESS: No, your Honor, I don't.
"THE COURT: Or do you, Mr. Cohen?
"MR. COHEN: No. I'm satisfied.
"THE COURT: All right.
 "But most importantly, Mr. Kresler, do you have any questions?
"THE DEFENDANT: No, sir."
The sentencing hearing was set for January 27, 1984, at which time the State refused to recommend that Kresler's term of imprisonment for the robbery convictions run concurrently with his previous sentence. The assistant District Attorney informed the court that Kresler had not lived up to his part of the bargain because he had not cooperated fully with law enforcement officials and had not given information concerning other criminal offenses.
Kresler took the stand and testified to the facts he had given Investigator Howard Turner of the Huntsville Police Department, which included information regarding drugs taken during the robberies of which he stood convicted, the buyers of the drugs, the name and extent of his codefendant's involvement in the robbery, and facts regarding other drug dealings in Madison County. The defendant also stated his willingness to discuss these drug transactions with the Huntsville Organized Crime Bureau, and he described the personal risk he had undertaken by telling the police what he knew.
Investigator Howard Turner testified that he visited Kresler in jail on two occasions. The first time the defendant refused to give Turner any information unless defense counsel was present, and the second time the defendant, with counsel present, did give Turner information. Turner testified that the defendant had, in fact, related to him all the information which Kresler described on the stand. Turner characterized the information given him by the defendant as "background information or intelligence type information," that is, unsubstantiated tips insufficient to issue arrest warrants. Turner concluded that Kresler had given him no new information which, with the exception of the facts regarding the involvement of Kresler's codefendant in the robbery, could lead to arrest warrants being issued or cases being cleared.
The assistant District Attorney pointed out to the trial judge that although the information on Kresler's codefendant was "solid" and could lead to an arrest, it did not meet the requirement of the plea bargain that Kresler provide information which would clear "other cases."
The court continued the sentencing hearing to April 12, 1984, when additional testimony was taken from Captain Ron Curlee of the Madison County Sheriff's Department and A.B.I. Investigator Thomas Taylor, both of whom stated that, although Kresler had dealt with them "in good faith" and had given them good background information, none of the revelations were substantial enough to result in arresting other criminals or solving other crimes.
Following argument by both parties, the trial judge concluded that, although he had no reason to doubt the defendant's good faith in dealing with law enforcement officials, the information provided by the defendant had nevertheless "not led to the issuance of any arrest warrants against other defendants . . . [or] cleared other cases in this county or anywhere else in the state."
The court also noted that the State abided by its agreement not to take a position on the defendant's sentences if the information proved not to be as fruitful as expected. The trial judge then pronounced that the defendant's Madison County sentences be served concurrently with each other but consecutive to the previous Montgomery sentence.
On appeal, the defendant argues that he did all that was reasonably required of him *Page 788 
under the terms of the plea bargain, that he fulfilled the condition of good faith cooperation imposed on him by the trial judge, and that he could not be expected to "hand arrests and convictions to the State on a silver platter." (R. 71)
We start with the recognition that in a plea bargain such as the one before us "the government's obligation to make a recommendation arises only if defendant performs his obligation." United States v. Simmons, 537 F.2d 1260, 1261 (4th Cir. 1976). The question here, of course, is whether the defendant performed his obligation. Upon review, we affirm the trial court's finding that he did not.
"Courts have frequently looked to contract law analogies in determining the rights of defendants aggrieved in the plea negotiation process." United States v. Calabrese,645 F.2d 1379, 1390 (10th Cir.), cert. denied, 451 U.S. 1018,101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); Cooper v. United States,594 F.2d 12, 15-16 (4th Cir. 1979); Ex parte Yarber, 437 So.2d 1330,1334 (Ala. 1983). See generally Westen and Westin, AConstitutional Law of Remedies for Broken Plea Bargains, 66 Calif.L.Rev. 471, 530 (1978). Some courts have applied the principle of substantial performance to enforce a plea bargain when the defendant has not literally or completely satisfied his part of the agreement, see, e.g., State v. Brockman,277 Md. 687, 357 A.2d 376, 384 (1976). Others have employed the maxim that the wording of an agreement should be construed most strongly against the drafter to find that "[a] plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language."United States v. Bowler, 585 F.2d 851, 854 (7th Cir. 1978).
In the present case, it is our judgment that neither the principle of substantial performance nor the maxim of construing the agreement most strongly against the State should apply. The record before us indicates that the defendant was well represented by counsel, was fully informed of the consequences of his bargain, and thereby knowingly agreed to be bound by the literal wording of his agreement with the State to recommend concurrent sentencing only "[i]n the event that . . . [the defendant's] information should lead to the issuance of arrest warrants against other defendants, or in the event that it should clear other cases."
Our conclusion that it was Kresler's intent to be bound by the literal wording of the agreement is supported by the fact that, prior to the conclusion of the plea bargain, all parties negotiated extensively, and Kresler's counsel had the foresight to recognize that his client's cooperation might not lead to the result anticipated by the State. The following comment by defense counsel belies any claim that Kresler thought all he had to do was cooperate fully regardless of the usefulness of his information:
 "I think there may be one further thing with regard to the information that Mr. Kresler is to provide the Huntsville authorities: that, in the event this information does not lead to arrest warrants or does not lead to the clearing of cases, the state will have no position with regard to whether these two sentences will run concurrent or consecutive with that in Montgomery." (Emphasis added.) (R. 11-12)
The State, in fact, made no recommendation regarding sentencing and the trial judge found that defendant had not performed his part of the bargain. The court's hearing evidence and deciding without a recommendation by the State conforms to the procedure approved in United States v. Simmons, supra:
 "[T]he question whether defendant did in fact fail to perform the condition precedent is an issue not to be finally determined unilaterally by the government, but only on the basis of adequate evidence by the Court which, in accordance with Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427
(1971), judicially approved the bargain. . . ." *Page 789 
537 F.2d at 1261. "[T]he trial court, because it has judicially approved the bargain, has a duty to inquire whether the terms have been followed." United States v. Swinehart, 614 F.2d 853,858 (3d Cir.), cert. denied, 449 U.S. 827, 101 S.Ct. 90,66 L.Ed.2d 30 (1980). "The [trial] court is in the best position to ascertain the facts, assess the intent of the parties under the plea agreement and, if it was breached, to exercise its discretion and fashion an appropriate remedy." 614 F.2d at 859.
The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.