From a conviction for the offense of burglary in the third degree, in violation of § 13A-7-7 (a), Code of Alabama (1975), pursuant to a guilty plea, and sentence of four years in prison, this appeal follows. For the reasons outlined below, the judgment of conviction and the sentence are due to be affirmed.
On April 3, 1984, an indictment was returned against the appellant charging him with the offense of theft of property in the third degree in violation of § 13A-7-7 (a), Code of Alabama
(1975). Subsequent to the indictment, one of the deputy district attorneys contacted the appellant's counsel and offered to plea bargain the case, with a suggested two-year prison sentence. Prior to the time that the offer was accepted, however, the State revoked its offer and proposed instead a four-year prison sentence as a second plea bargain offer.
On December 3, 1984, the appellant appeared in open court, along with court-appointed counsel, and entered a plea of guilty to the offense of third degree burglary. Before accepting the guilty plea, the Honorable Harold E. Walden, Circuit Judge, Coosa County, Alabama, informed the appellant of his rights and determined that the plea was being "voluntarily and intelligently" entered. The appellant executed a "waiver of rights" form which indicated his understanding of his Constitutional rights.[1] The appellant informed Judge Walden at this time that he was entering the guilty plea on the basis of the first offer made by the State. Judge Walden instructed the parties that he would consider the matter until the date of sentencing, at which time he would "rule on whether or not the plea was made pursuant to the first offer by the State."
On June 14, 1985, the sentencing hearing was conducted before the Honorable W.W. Rabren, Circuit Judge, Coosa County, Alabama. At that time, testimony was taken from the Honorable Robert L. Williams, Jr., Deputy District Attorney. According to Williams, he initially contacted the Honorable Mack Clayton, attorney-at-law, who was representing the appellant for the present offense. On behalf of the State, Williams offered a plea bargain agreement wherein, in exchange for a plea of guilty, the State would recommend to the trial court a "sentence of two years or the minimum under the Habitual Offender Act, whichever was more." Williams stated that the offer was made verbally to attorney Clayton but was never accepted.[2] Williams stated that he subsequently withdrew the two-year plea bargain offer from consideration in the following manner:
 "[Williams]: I contacted Mr. Clayton and informed him that we would be giving him a new offer, the previous one having not been accepted. I do not recall what that new offer was. It was considerably higher, however.
 "Q. At that point in time, had the defendant entered a plea of guilty?
"A. No, sir, he had not.
 "Q. After you informed Mr. Clayton that the State had withdrawn its initial offer what, if anything, was done concerning a guilty plea in this case?
 "A. Mr. Clayton's contention was that he had the right to accept the State's first offer of the two years or the minimum under the Habitual Offender Act, whichever was more. We presented *Page 1180 
this — it was the State's contention that that offer was rejected, excuse me, not rejected, but that offer had been withdrawn prior to acceptance. Mr. Clayton and myself and the defendant appeared before Judge Walden, the previous Circuit Court Judge, and Judge Walden took the plea reserving to the time of sentencing in this case as to whether or not he would enforce the first offer made by the State upon which the defendant relied in pleading guilty, or whether there would basically be an open plea, or setting the plea aside."
On cross-examination, Williams stated that, to the "best of [his] recollection," the offer was "definitely never accepted."
At the hearing, the State argued that there was no "agreement" because there had been no acceptance of the offer. The State also contended that it "had the right to withdraw [the offer] until it had been accepted." After a consideration of the arguments by the State as well as those presented by defense counsel, the trial court concluded that there was "no plea bargaining" in this case and stated as follows:
 "[The defendant] never did accept the offer made by the State and [it] was withdrawn. Of course, this tells us something that experience is the best teacher, that we have it in writing and there [will] be no question of what the agreement was."
Because the appellant had been previously convicted of a felony prior to the commission of the present offense, he was sentenced to four years in the State penitentiary under the provisions of the Alabama Habitual Felony Offender Act.
The sole issue raised by this appeal is stated as follows: "Whether or not the court erred on June 14, 1985, when it ruled that defendant's guilty plea was not made pursuant to any plea bargain agreement between the State and the defendant." In support of his position, the appellant cites Ex parte Yarber,437 So.2d 1330 (Ala. 1983), for the legal proposition that "once the State chooses to make a [plea bargain] agreement, it should not be allowed to repudiate that agreement with impunity. [Citations omitted.]" Id. at 1335. Additionally, appellant relies on Burns v. State, 455 So.2d 113 (Ala.Cr.App. 1984).
Appellant's reliance on Ex parte Yarber, is not well placed. The facts of this case are clearly distinguishable from those in Yarber. In Yarber, the trial court concluded that there was a "plea agreement" but "declined to enforce the agreement, and [the] defendant [went to] trial." Id. at 1333. In the present case, the trial court ruled that a plea agreement did not
exist. Thus, there was nothing to be enforced.[3]
The appellant also relies on the recent case of Burns v.State, 455 So.2d 113 (Ala.Cr.App. 1984), as supporting his position that an enforceable plea bargain agreement existed. Some of the language in Burns, however, indicates that a distinction should be drawn between the State's ability to withdraw from an offer in a plea bargain case, as opposed to withdrawal from a plea bargain agreement. In remanding theBurns case to the Jefferson County Circuit Court, this court, per Presiding Judge Bowen, gave the following instructions:
 "We, therefore, remand this cause to the Jefferson Circuit Court for a determination of whether the defendant and the prosecutor did, in fact, enter into a plea bargain agreement. If a finding is made that an agreement existed, the circuit court is instructed to apply the principle set out in Yarber, supra." Id.
at 114. (Emphasis in original.)
On the return to remand, the trial court concluded that "an agreement of ten years was entered into and the facts of this case [Burns] are almost `on all fours' with the facts inYarber." Id. In the present case, *Page 1181 
the trial court expressly ruled that no plea bargain agreement existed prior to the time that the guilty plea was entered. Thus, the facts of this case can be readily distinguished from the facts in Burns.
Since its opinion in Yarber, the Alabama Supreme Court has clarified its application to plea bargain situations. In reversing a judgment of this court, which attempted to follow the "letter and spirit of Yarber," the Alabama Supreme Court held that, contrary to this court's conclusion, it was apparent that the trial court correctly decided that no plea bargain agreement existed. Congo v. State, 455 So.2d 896 (Ala. 1984). In reaching this conclusion, the Alabama Supreme Court stated as follows:
 "Under Ex parte Yarber, . . ., a defendant who has negotiated a plea bargain with the State is not automatically entitled to a judgment based upon that agreement. He does have the right to have it submitted to the trial court for that court's consideration. The trial court is not bound to accept the agreement. The power of the trial court to so decide carries with it the power to determine whether or not such an agreement exists between the State and the defendant.
 ". . . The alleged [plea bargain] agreement [in this case] was informal and unwritten. Yarber
recognizes the custom that produces such unwritten plea bargains, but also acknowledges that such agreements may be written as well as oral. While the informal and unwritten negotiations do not lose their vitality if it is proved that they ripen into an agreement, that very informality increases the risk that such negotiations will be found not to have resulted in an agreement." Id. at 897. (Emphasis added.)
In Congo, the trial court's finding that "no agreement resulted" as a result of the negotiations between the State and the defendant was a correct finding, according to the Alabama Supreme Court, based upon the record on appeal. Here, as inCongo, after a thorough review of the record on appeal, it is apparent that the trial court considered the negotiations which took place between the parties and correctly concluded that an "agreement" was never reached.
As this court, per Presiding Judge Bowen, noted in Kresler v.State, 462 So.2d 785, 789 (Ala.Cr.App. 1984):
 "`The [trial] court is in the best position to ascertain the facts, assess the intent of the parties under the plea agreement and, if it was breached, to exercise its discretion and fashion an appropriate remedy.'" Quoting United States v. Swinehart, 614 F.2d 853, 859 (3rd Cir.), cert. denied, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980).
Certainly, the trial court, in this case, was in a much better position to ascertain the facts and determine the intent of the parties. We find nothing in the record on appeal which discredits the trial court's decision that no plea bargain agreement existed.
Our decision in this case is consistent with the reasoning and logic contained in recent opinions drafted by the United States Supreme Court which discuss this issue. In Mabry v.Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), the United States Supreme Court stated, "The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty."Id., 467 U.S. at ___, 104 S.Ct. at 2548, 81 L.Ed.2d at 445
(footnote omitted). In upholding the validity of the guilty plea which was entered in Mabry,[4] *Page 1182 
the Court concluded that the petitioner was "fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now." Id. In reaching this conclusion, the following analysis was made:
 "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.
 "It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well-settled that plea agreements are consistent with the requirements of voluntariness and intelligence — because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange. It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired. In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747
(1970), we stated the applicable standard:
 "`[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harrassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).' [Citations omitted.]
 "Thus, only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause." Id., 467 U.S. at ___, 104 S.Ct. at 2546-2547, 81 L.Ed.2d 442. (Footnotes omitted.)
The Supreme Court in Mabry also discussed the application ofSantobello v. New York, 404 U.S. 257, 92 S.Ct. 495,30 L.Ed.2d 427 (1971), to the facts of the case under consideration. The Court noted that Santobello "demonstrates why respondent may not successfully attack his plea of guilty," and then stated as follows:
 "Respondent's plea was in no sense induced by the prosecutor's withdrawn offer; unlike Santobello, who pleaded guilty thinking he had bargained for a specific prosecutorial sentencing recommendation which was not ultimately made, at the time respondent pleaded guilty he knew the prosecution would recommend a 21-year consecutive sentence. Respondent does not challenge the District Court's finding that he pleaded guilty with the advice of competent counsel and with full awareness of the consequences — he knew that the prosecutor would recommend and that the judge could impose the sentence now under attack. Respondent's plea was thus in no sense the product of governmental deception; it rested on no `unfulfilled promise' and fully satisfied the test for voluntariness and intelligence." Id.
467 U.S. at ___, 104 S.Ct. at 2548, 81 L.Ed.2d at 444. (Footnotes omitted.)
The facts of this case are almost identical to the facts inMabry v. Johnson, except for the significant distinction that the initial offer, in the instant was withdrawn prior to the acceptance of the agreement.
Here, as in Mabry, the appellant entered his guilty plea with full awareness of the consequences; there was no "governmental deception"; and, there was no "unfulfilled *Page 1183 
promise." Additionally, there was no "agreement" reached between the parties, as noted by the trial court. The appellant was, in effect, "pleading blind," fully aware of the consequences. As the United States Supreme Court has stated, "it is not unfair to expect him to live with those consequences now." Id.
AFFIRMED.
All the Judges concur.
[1] The appellant does not question the voluntary and intelligent nature of the plea that he entered. Appellant simply wishes to have this court remand the case to the trial court with instructions that it "consider the [first] negotiated plea and [its] terms."
[2] There was no "formal" plea bargain agreement in that no documents were signed. The agreement was entirely verbal and consisted of telephone conversations between Williams, the State's attorney, and Clayton, defense counsel. (Note: At the sentencing hearing, Williams was the only person who testified.)
[3] Additionally, the defendant in Yarber presented the issue to the trial court by way of a pretrial motion and did not enter a guilty plea. In the present case, a guilty plea was entered notwithstanding the fact that the existence of an "agreement" was hotly contested by the State. In effect, the appellant was "pleading blind."
[4] In Mabry v. Johnson, an initial offer was made by the deputy prosecutor recommending concurrent prison sentences on certain charges. After the defendant accepted the State's offer, defense counsel called the prosecutor. After he was informed of the defendant's acceptance of the offer, the prosecutor told defense counsel that there had been a "mistake" and that the offer was withdrawn. A new offer of consecutive sentences was made but this offer was rejected. After trial began, a mistrial was declared, and the defendant ultimately accepted the second offer. The trial court followed the provisions of the second plea bargain agreement and ordered consecutive prison sentences to be served by the defendant. The United States Supreme Court concluded that the guilty plea, pursuant to the second offer made by the State, was valid.