561 So.2d 1123 (1990)
Frank Edward MADISON
v.
STATE.
1 Div. 941.
Court of Criminal Appeals of Alabama.
March 30, 1990.
Stephen K. Orso, Mobile, for appellant.
Don Siegelman, Atty. Gen., and Joseph G.L. Marston III, Asst. Atty. Gen., for appellee.
McMILLAN, Judge.
This appeal arises out of the appellant's conviction of the felony possession of marijuana.
The appellant was indicted for the felony possession of marijuana, in violation of § 20-2-70, Code of Alabama (1975). The appellant appeared in open court and made a motion asking the trial court to enforce the terms of a plea bargain agreement allegedly made between him and officers of the Mobile Police Department. The court heard evidence from the parties, after which it denied the appellant's motion. That same day, the appellant, accompanied by his attorney, reappeared before the court, withdrew his plea of not guilty, and entered a guilty plea to the offense charged. Prior to accepting the guilty plea of the appellant, who had executed an Ireland form, the court engaged him in a *1124 Boykin colloquy. Thereafter, the court accepted the appellant's guilty plea and sentenced him under the Split Sentence Act to a term of ten years' imprisonment, with three years to be spent in actual confinement and five years' to be served on probation.
The only issue raised in this appeal is the appellant's contention that the trial court erred in denying his motion to enforce the plea agreement that he had allegedly made with the district attorney's office.
The record indicates that Corporal Christopher Bear, of the Narcotics Division of the Mobile Police Department, found the appellant to be in possession of 16.2 ounces of marijuana. Although the appellant was not placed under arrest at this time, Corporal Bear took him into custody and transported him to the police station, where he made a confession. Thereafter, the appellant entered into an oral agreement with Bear and Corporal Eddie Carr of the Mobile Police Department, in which the officers promised to make a recommendation of leniency to the district attorney's office if the appellant proved to be a "reliable informant." To do this, Bear told the appellant he would have to provide the police with information which resulted in the arrest of at least three drug dealers known to be operating in the Mobile area, including Anthony Fuller, the dealer from whom the appellant had been purchasing his own marijuana. Bear also advised the appellant that the amount of contraband confiscated as a result of his tips had to be at least equivalent to the 16.2 ounces which Bear had found on the appellant's person. After the appellant agreed to work with the two officers, he was allowed to leave the police station without having been arrested.
After two to three weeks had passed with no information of value having been received from the appellant, Corporal Bear concluded that the appellant did not intend to provide any meaningful assistance to the police, and arrested him on the outstanding possession of marijuana charge. Corporal Bear testified that information received from the appellant had led to only one arrest, in which one gram of marijuana was confiscated. Bear also testified that the appellant had refused to help the police make a case against his supplier, Anthony Fuller. Bear acknowledged that the appellant had given him information concerning a dealer known either as Charlie Timmes or Timmy Childers, and that Childers was arrested just one day later. Bear stated, however, that the Mobile Police Department already had Childers under surveillance when the appellant's information about him was received, and that the appellant did not give any information to the police that they did not already possess.
At the conclusion of the hearing, the trial court denied the appellant's motion, holding as follows:
"THE COURT: All right. Without the Court indicating its approval of such deals, agreements, or tactics, or that the Court would enforce such an agreement or deal if, in fact, it had been made and performed, the Court finds the evidence does not disclose that any such agreement, if made, was breached. Therefore, I deny your motion."
We find the facts of this case to be similar to those in Fuller v. State, 481 So.2d 1178 (Ala.Cr.App.1985). In Fuller, the prosecution offered to plea bargain the appellant's case, suggesting a two-year prison sentence. Before the appellant accepted the offer, however, the State revoked it and proposed a second plea agreement, one recommending a four-year term of imprisonment. Thereafter, the appellant appeared with his attorney in open court and, having executed an Ireland form, was engaged by the court in a Boykin colloquy, at which time the appellant advised the court that he was entering a guilty plea based on the prosecution's first offer. The trial court reserved its ruling as to "whether or not the plea was made pursuant to the first offer by the State" until the appellant's sentencing hearing. At that time, the court heard the evidence presented by the parties, after which it found that no plea agreement existed as the result of the prosecution's initial offer. The court then sentenced the appellant, pursuant to the *1125 Habitual Felony Offender Act, to four years' imprisonment.
In affirming the trial court's judgment and sentence in Fuller, this court distinguished the facts of that case from those in Ex parte Yarber, 437 So.2d 1330 (Ala. 1983), noting that in Yarber, the trial court found that a plea agreement existed but declined to enforce it. In Fuller, however, the trial court found that no agreement existed and, therefore, that there was nothing to enforce. Id., at 1180. We then held as follows:
"`... The alleged [plea bargain] agreement [in this case, Fuller ] was informal and unwritten. Yarber recognizes the custom that produces such unwritten plea bargains, but also acknowledges that such agreements may be written as well as oral. While the informal and unwritten negotiations do not lose their vitality if it is proved that they ripen into an agreement, that very informality increases the risk that such negotiations will be found not to have result in an agreement.' [Congo v. State, 455 So.2d 896 (Ala.1984).] [Emphasis added in Fuller].
"In Congo, the trial court's finding that `no agreement resulted' as a result of the negotiations between the State and the defendant was a correct finding, according to the Alabama Supreme Court, based upon the record on appeal. Here, as in Congo, after a thorough review of the record on appeal, it is apparent that the trial court considered the negotiations which took place between the parties and correctly concluded that an `agreement' was never reached.
"As this court, per Presiding Judge Bowen, noted in Kresler v. State, 462 So.2d 785, 789 (Ala.Cr.App.1984):
"`The [trial] court is in the best position to ascertain the facts, assess the intent of the parties under the plea agreement and, if it was breached, to exercise its discretion and fashion an appropriate remedy.' Quoting United States v. Swinehart, 614 F.2d 853, 859 (3rd Cir.), cert. denied, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980).
"....
"Our decision in this case is consistent with the reasoning and logic contained in recent opinions drafted by the United States Supreme Court which discuss this issue. In Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), the United States Supreme Court stated, `The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty.' Id., 467 U.S. at 511, 104 S.Ct. at 2548, 81 L.Ed.2d at 445 (footnote omitted). In upholding the validity of the guilty plea which was entered in Mabry, the Court concluded that the petitioner was `fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now.' Id."
Fuller, 481 So.2d at 1181-82 (footnote omitted). See also, Ex parte Swain, 527 So.2d 1279, 1280 (Ala.1988).
In the present case, the order of the trial court denying the appellant's motion does not specifically address the existence of a plea agreement. Rather, the court held that if an agreement did exist, it was not breached by the State. In this Court's opinion, however, the record clearly establishes that there was no such agreement.
In Cooper v. United States, 594 F.2d 12 (4th Cir.1979), the Court set forth the conditions under which the government could not withdraw from a plea bargain agreement:
"Within this general constitutional framework of substantive due process, here given an added dimension by the necessary implication of the right to effective assistance of counsel, we conclude that the defendant's constitutional rights were here violated by the government's failure to honor its plea proposal. In so holding, we emphasize those factual elements most crucial to our finding of right and violation in order to confine our holding as narrowly as we may for decision. Here [1] the proposal was specific and unambiguous in form, and [2] was made without any reservation related to a superior's approval or *1126 otherwise; [3] its content was reasonable in context; [4] it was made by a prosecutor with apparent (and probably actual) authority at the time; [5] it was communicated promptly to the defendant so that no question of staleness was involved; [6] the defendant assented promptly and unequivocally to its terms, indicated his assent to his counsel, and was entitled so far as the record shows to assume that its communication to the government would consummate the plea agreement; defense counsel did in fact within a matter of a few hours communicate defendant's acceptance to the government, by sheer fortuity being told of the government's `withdrawal' before he could vocalize his client's `acceptance'; and finally, [7] the reason for the attempted withdrawal had nothing to do with extenuating circumstances affecting the government's or any public interest that were unknown when the proposal was extended...."
Id. at 19 (emphasis supplied).
Without addressing the existence of the remaining elements, it is clear to this Court that the "agreement" in the present case fails to satisfy elements (2) and (4) of the test established in Cooper, supra. Any understanding that may have existed in this case was between Corporals Bear and Carr and the appellant. The record is devoid of any evidence that the prosecutor consented to, or was even aware of, this "agreement."
Further, in the present case, as in Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), and Fuller, supra, the appellant's plea was in no way induced by the prosecutor's withdrawn offer. The trial court had denied the appellant's motion hours before he entered his guilty plea. Moreover, the trial court allowed the appellant's attorney to confer with the prosecutor during the intervening period of time to see if some agreement could be reached between the prosecution and the appellant. Only then did the appellant enter his guilty plea. Because it did not impair the voluntariness or intelligence of his guilty plea, the appellant's inability to enforce the alleged plea bargain agreement is without constitutional significance. Mabry, supra, 467 U.S. at 510, 104 S.Ct. at 2548. "[The appellant] was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now." Id. at 511, 104 S.Ct. at 2548.
Finally, it can be reasonably inferred from the trial court's order that, if an agreement did exist, it was the appellant and not the State that committed the breach. Under these circumstances, the agreement would be void, and the State would have been free to reprosecute the case. Project: Criminal Procedure, 76 Geo.L.J. 707, 862-63 (1988) (and cases cited therein).
AFFIRMED.
All the Judges concur.