WELCH, Judge.
The State appeals from an order of the Morgan Circuit Court dismissing all charges pending against J.R.M.[1] The circuit court’s decision was based upon its finding that J.R.M. had entered into a plea agreement that called for the dismissal of the charges in exchange for J.R.M.’s assistance as a confidential informant.
J.R.M. was indicted on charges of trafficking in methamphetamine, a violation of § 13A-12-231, Ala.Code 1975; unlawful possession of a controlled substance, a violation of § 13A-12-212; second-degree unlawful possession of marijuana, a violation of § 13A-12-214; and possession with intent to use drug paraphernalia, a violation of § 13A-12-260. After being indicted, J.R.M. approached members of the Morgan County Drug Task Force[2] about “working off some charges.” (R. 6.) He worked with task-force members as a con *81 fidential informant, providing information that led to nine arrests; however, the Morgan County District Attorney did not accept the recommendation of task-force officials that all the charges in two pending indictments against J.R.M. be dismissed. Instead, the district attorney offered J.R.M. a 25-year prison sentence in exchange for a guilty plea to unlawful possession of a controlled substance. After receiving that offer, J.R.M. filed a motion to show cause why the plea agreement should not be enforced.
Evidence adduced during the hearing on the motion tended to show the following. Task Force Investigator Jim England testified that, after J.R.M. asked about “working off some charges,” he agreed to let J.R.M. work for him as a confidential informant on several occasions. On those occasions, J.R.M. provided “substantial assistance” to law enforcement officials. (R. 12.)
England explained that law enforcement agencies and the Morgan County District Attorney’s Office had a “general format that if this subject is charged with this and they do this amount of work, it’s generally recognized that that’s what’s going to happen.” (R. 14.) Such agreements were rarely reduced to writing. He added that he had no reason to believe that the “general format” would not be followed in this case.
England denied telling J.R.M. explicitly that the charges against him would be dismissed if he worked with the task force; he said he told J.R.M. only that he would recommend to the district attorney that the charges against J.R.M. be dismissed. He did say, however, that J.R.M. constantly asked how things were progressing toward dismissal of his cases. When asked by defense counsel, “Did you ever on any occasion tell my client that things were moving forward to the goal, which was to have his cases dismissed?” England replied, “As far as I’m concerned, yes, sir, on my part.” (R. 13.) He also said that it was his understanding that J.R.M. was working as a confidential informant because J.R.M. wanted to have the charges against him dismissed.
J.R.M. did everything that was asked of him as a confidential informant for the drug task force. England acknowledged that the role of confidential informant is potentially a very dangerous one. (R. 15-16.)
J.R.M. testified that law enforcement officials from both the drug task force and the City of Decatur told him that, “if I did enough [to assist them] that [the charges] could be made [to] go away.” (R. 34.) He admitted that he never discussed dismissal of the charges with anyone in the Morgan County District Attorney’s Office. He said he thought “Mr. Jim [England] was representing me” in discussions with the district attorney. (R. 41.)
After the hearing, the circuit court dismissed all of the charges pending against J.R.M., stating, “I believe that you were allowed to believe that you had an agreement to work these off, and I also believe that you did everything you were asked to do.” (R. 52.) ‘Whether Mr. England overextended himself or not I don’t know. But I think more harm would come to the community by me not honoring the agreement that you thought you had and then making it harder for them in the future to make deals because that’s the way it’s done.” (R. 53-54.)
In the circuit court’s written order dismissing the indictments, the circuit court made the following findings:
“It seemed apparent to this Court that the officers were willing to promise the defendant whatever they had to in order to insure the defendant’s coopera *82 tion. In effect, the officers promised the defendant that if he did what he was asked to do that his cases would in fact be dismissed. Further, it is undisputed that the defendant did everything he was asked to do by the law enforcement officers.
“This Court finds that the defendant was allowed to believe that he had an agreement with law enforcement to have his charges dismissed and the approval of the District Attorney was a mere formality. The defendant did everything he was asked to do while under the belief his cases would in fact be dismissed. The Court further finds that if this Court does not recognize this type of agreement, future investigations of this nature will be significantly hindered.”
(R. 36.)
The State argues that there was no agreement of any kind between the district attorney’s office (as opposed to the law enforcement officials with whom J.R.M. worked) and J.R.M., and because the district attorney’s office was not a party to the agreement between J.R.M. and law enforcement officials, it could not be bound by it. Thus, the State asserts, the trial court abused its discretion in finding there was a valid plea agreement and dismissing the indictments against J.R.M.
The appropriate standard of review is set forth in Sides v. State, 575 So.2d 1232 (Ala.Crim.App.1991):
“We start with the premise that this court will not disturb the decision of the trial court, in relation to the findings concerning the plea bargain agreement, unless a clear abuse of discretion has been shown. See McKee v. State, 253 Ala. 235, 44 So.2d 781 (1949).
“ ‘This Court will not interfere with the trial court’s exercise of discretion unless a clear abuse in the exercise of that authority has been shown. Woods v. State, 367 So.2d 982, 984 (Ala.1978). The trial judge’s actions are presumptively correct in the absence of a showing to the contrary. Ballard v. State, 236 Ala. 541, 542,184 So. 260 (1938). On appeal, error is not presumed and the party claiming that a trial judge has abused his discretion has the burden of persuasion. [Citation omitted.]’ ”
575 So.2d at 1234 (quoting Gratton v. State, 456 So.2d 865, 872 (Ala.Crim.App.1984)).
In Madison v. State, 561 So.2d 1123 (Ala.Crim.App.1990), we considered whether the trial court had abused its discretion in denying the defendant’s motion to enforce a plea agreement allegedly made between the defendant and police. The police had promised the defendant that they would “make a recommendation of leniency to the district attorney’s office if the [defendant] proved to be a ‘rehable informant.’” 561 So.2d at 1124. As in this case, the defendant did not discuss an agreement with the district attorney’s office.
In affirming the order of the trial court denying the defendant’s request to enforce the plea agreement, this Court relied on a decision of the United States Court of Appeals for the Fourth Circuit, Cooper v. United States, 594 F.2d 12 (4th Cir.1979), which set forth the conditions under which the government could withdraw from a plea agreement. We quoted from Cooper as follows:
“ Within the general constitutional framework of substantive due process, here given an added dimension by the necessary implication of the right to effective assistance of counsel, we conclude that the defendant’s constitutional rights were here violated by the government’s failure to honor its plea proposal. *83 In so holding, we emphasize those factual elements most crucial to our finding of right and violation in order to confine our holding as narrowly as we may for decision. Here [1] the proposal was specific and unambiguous in form, and [2] was made unthout any reservation related to a superior’s approval or otherwise; [3] its content was reasonable in context; [4] it was made by a prosecutor with apparent (and probably actual) authority at the time; [5] it was communicated promptly to the defendant so that no question of staleness was involved; [6] the defendant assented promptly and unequivocally to its terms, indicated his assent to his counsel, and was entitled so far as the record shows to assume that its communication to the government would consummate the plea agreement; defense counsel did in fact within a matter of a few hours communicate defendant’s acceptance to the government, by sheer fortuity being told of the government’s “withdrawal” before he could vocalize his client’s “acceptance”; and finally, [7] the reason for the attempted withdrawal had nothing to do with extenuating circumstances affecting the government’s or any public interest that were unknown when the proposal was extended....’”
Madison, 561 So.2d at 1125-26, quoting Cooper, 594 F.2d at 19 (emphasis supplied in Madison).
In Madison, this Court determined that the “agreement” between the defendant and the police failed to satisfy elements 2 and 4 as set forth in Cooper, that is, that the agreement was not made without any reservation related to a superior’s approval or otherwise and was not made by a prosecutor with at least apparent authority. In determining that a valid agreement did not exist, we found that “[t]he record is devoid of any evidence that the prosecutor consented to, or was even aware of, this ‘agreement.’ ” 561 So.2d at 1126.
Here, the evidence tends to show that, as was the case with the defendant in Madison, J.R.M. entered into an agreement with members of the drug task force, but he did not have any discussions with the district attorney’s office. There is no evidence in the record to indicate that the district attorney’s office was in fact aware of the agreement.
Although we understand the trial court’s rationale behind dismissing the indictments against J.R.M., we are bound by precedent, which holds that the State cannot be bound by a plea agreement to which it was not a party. Moreover, we do not believe that allowing law enforcement officers to make agreements that the district attorney does not know of or approve is a good practice. Therefore, we hold that the trial court abused its discretion in finding that a valid plea agreement existed and in dismissing the indictments against J.R.M.
For the reasons set forth above, the order of the Morgan Circuit Court is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BASCHAB, P.J., and McMILLAN, SHAW, and WISE, JJ., concur.

. Because the appellant is a confidential informant whose work with law enforcement resulted in several arrests and convictions, his role as a confidential informant serves as the basis for the appellant’s grounds for appeal and so the fact must be included in this opinion. Thus, out of an abundance of caution, this Court will use the appellant’s initials in this opinion.

. The Morgan County Drug Task Force is part of the Morgan County Sheriffs Department. Task Force Investigator Jim England testified that the City of Decatur Police Department, which was instrumental in developing some of the drug cases against J.R.M., were involved in all the cases in which J.R.M. had worked as a confidential informant.