194 So.2d 548

John G. CROMMELIN

v.

MONTGOMERY INDEPENDENT TELECASTERS, INC.

3 Div. 214.

Supreme Court of Alabama.

Jan. 26, 1967.

**392**

Kenneth Cooper, Bay Minette, for appellant.

Crenshaw & Waller, Montgomery, for appellee.

HARWOOD, Justice.

In the proceedings below the plaintiff claimed damages of $500,000 for breach of contract. The jury returned a verdict in favor of the plaintiff, and fixed his damages at $11,500, and judgment was entered pursuant to the verdict.

Thereafter the defendant timely filed a motion for a new trial, averring among other grounds, excessiveness of the damages. After hearing and argument on the motion, the court entered an order finding that the verdict was excessive by $6,750, and granted the motion for a new trial unless the plaintiff, within a specified time, filed an instrument remitting all damages in excess of $5,000, and agreeing to a reduction of the judgment to $5,000. The plaintiff did not file the written remittitur within the period allowed. Hence, the order granting the new trial became effective. This appeal is from the order granting the motion for a new trial under the above conditions.

The action below was for a breach of contract growing out of the refusal of the defendant to permit the plaintiff to make two political broadcasts after the plaintiff had contracted with the defendant for two television appearances on defendant's broadcasting facility.

The complaint contained three counts. However, the court gave the general af-

firmative charge in favor of the defendant as to Counts 2 and 3, and the case was submitted to the jury solely on Count 1.

Count 1 as amended is substantially in code form. It did not aver any special damages.

The evidence presented below shows that the plaintiff was a candidate for two nominations in the Democratic primary conducted in May 1964, one for the office of Representative in the United States House of Representatives from the Second Congressional District of Alabama, and the other as Presidential Elector, Place No. 1, which was a statewide race.

On 7 April 1964, the plaintiff entered into a contract with the defendant for two thirty-minute telecasts, to be delivered over defendant's facility on 15 April 1964, beginning at 7 P. M., and on 1 May 1964, beginning at 7:30 P. M. The plaintiff gave his check for $220.00 in payment for these two telecasts, and also paid the defendant $31.00 for some spot announcements advertising his prospective appearances.

When the plaintiff came to the defendant's television station at 6:30 P.M., on 15 April 1964, he was informed by its agent, Frank Tirico, that the defendant's Washington lawyer had advised Tirico not to permit the broadcast. It was the defendant's contention that a satisfactory script of the plaintiff's proposed speech had not been submitted to the station. This question was resolved against the defendant by the jury and is not material to this review. At any rate, after discussion between the plaintiff and Tirico, the plaintiff was finally informed that he would not be permitted to make the telecast.

On 1 May 1964, the plaintiff again appeared at the defendant's station and sought permission to make his second thirty-minute telecast at 7:30 P.M., but was again refused permission by agents of the defendant to make the broadcast.

The check for $220.00 which the plaintiff gave in payment of the broadcasts was re-turned to the plaintiff and the defendant also sent to the plaintiff its check for $31.00, as a refund of the payment received for the spot announcements. This latter check had not been cashed by the plaintiff at the time of the trial below.

In an effort to establish his damages, the plaintiff testified that they consisted of the cost of his campaign expenses, some $3,188.-05. He testified he began his campaign shortly after 25 February 1964. Included in this total of campaign expenses was $500.00 as qualifying fee as a candidate for the Democratic nomination to Congress, and $50.00 as the qualifying fee for his Presidential Elector candidacy. The remaining items were the usual campaign expenses such as hotels, motels, advertising, secretarial expense, printing, etc.

The plaintiff further testified that he had suffered an additional damage of $10,000, estimated on the basis of 100 days spent campaigning at $100.00 per day, on the basis that he had once hired a lawyer who did about five minutes work and charged him $100.00, and "I paid him at the rate of $100.00 a day, and I figured my time was probably worth about what his was."

The plaintiff further testified that additional damages were suffered by him in the amount of $45,000, this being two years' salary as a member of the United States House of Representatives.

In an attempted proof of further additional damages, the record shows the following during the direct examination of the plaintiff:

"MR. COOPER: How much other damages did you suffer in addition to those that you have enumerated, Admiral?

"MR. WALLER: I object, if the Court please.

"THE COURT: I overrule the objection.

"MR. COOPER: All right, Admiral. Give us the figure.

"THE WITNESS: The figure is $441,812.00."

█ As before stated, the court gave at the defendant's request the general affirmative charge with hypothesis, as to Counts 2 and 3, and the issues were submitted to the jury only on Count 1. This count claimed no special damages. The fact that this count was substantially in code form did not dispense with the necessity of averring special damages. Irby v. Wilde, 150 Ala. 402, 43 So. 574. It is elemental that damages not claimed are not recoverable, and the burden is upon the claimant to not only plead his special damages, but after pleading the same, then to establish the existence of, and the amount of such damages by competent evidence. Revel v. Prince, 37 Ala.App. 457, 69 So.2d 470.

█ General damages are such as naturally and necessarily flow from a wrongful act; special damages are such as flow naturally, *but not necessarily,* from the wrongful act. General damages do not have to be pleaded in order to give the defendant notice that they will be proved at the trial, for they are implied by law. Special damages must be pleaded in order to inform a defendant as to what claim he must be prepared to defend. King Land and Improvement Co. v. Bowen, 7 Ala.App. 462, 61 So. 22.

█ All of the evidence introduced by the plaintiff to establish his damages was directed toward consequential damages not necessarily flowing from the breach of contract, that is, they tended to prove special damages which had not been pleaded.

█ Another well established legal doctrine would also compel an affirmance of the order now being considered. Such doctrine is that neither the fact nor amount of damages, nor the cause of the damages, can rest solely on speculation. See 22 Am.Jur.2d, Damages, Sec. 24. Or as stated in Brigham and Co. v. Carlisle, 78 Ala. 243:

"Mere speculative profits, such as might be conjectured would be the probable result of an adventure defeated by a breach of contract, the gains from which are entirely conjectural, and with respect to which no means exists of ascertaining even approximately the probable results, cannot, under any circumstances be brought within the range of recoverable damages. Suth. on Dam. 141. Profits speculative, conjectural or remote, are not, generally, regarded as an element in estimating damages."

A political campaign is inherently an adventure. Resort to pure speculation would have to be indulged to conclude that the breach of contract complained of caused the plaintiff's loss of the political races.

That the plaintiff himself recognized the speculative nature of cause and effect in the refusal of the defendant to permit the two telecasts is evidenced by his reply to a question propounded to him on cross examination. This question was whether he was telling the jury that he would have been nominated to the offices he sought if he had been permitted to make the two telecasts. The plaintiff replied, "No, I am not telling anybody that." It was the plaintiff's opinion, however, that his chance of obtaining the nominations had been substantially injured by the action of the defendant in denying him the opportunity to make the telecasts.

Further, speculation must be compounded as to the plaintiff's recovery of his claimed damages in view of the showing that plaintiff's successful opponent in the primary election, and who had been in the Congress for over twenty years, was defeated by the Republican nominee in the general election held in November 1964.

The posture of the pleading and proof as presented by this record and the legal principles governing necessitate an affirmance of the order of the lower court granting the defendant's motion for a new trial.

Other points are argued by counsel for the defendant-appellee, one being the lack of

data presented by the plaintiff's evidence upon which the jury could assess damages with a reasonable degree of certainty. We see no need to write to the merit, or non-merit, of these additional contentions made by counsel for the defendant in support of the court's action granting the motion for a new trial. The basic principles to which we have adverted, and discussed, fully support the order granting the motion for a new trial.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.