Larry G. CLARK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6346.

Court of Appeals of Alaska.

Jan. 30, 1998.

Rehearing Denied Feb. 27, 1998.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and
MANNHEIMER and STEWART, JJ.

## OPINION

STEWART, Judge.

Larry G. Clark was convicted of two counts of attempted kidnapping, AS

11.41.300(a)(1)(C) and AS 11.31.100(a), two counts of attempted sexual abuse of a minor in the second degree, AS 11.41.436(a)(2) and AS 11.31.100(a), one count of assault in the first degree, AS 11.41.200(a)(1), one count of failure to render assistance, AS 28.35.060(a) & (c), and one count of driving while intoxicated, AS 28.35.030(a)(1) & (2). Clark received a composite sentence of eleven years and thirty-two days to serve. Clark appeals his conviction and part of his sentence on various grounds.

On September 14, 1995, A.G. and S.G., sisters who were thirteen and eleven years old respectively, were walking home from school along Lathrop Street in Fairbanks. Clark waved to them as he drove by in his truck. A.G. thought Clark was a friend of her father's and waved back. Clark drove around the block and pulled over to the curb as the girls approached. When Clark was a little more than an arms-length away from the girls, he motioned for them to get in his truck saying, "Come on, jump in the truck."

The girls did not stop. Clark backed up his truck, to keep pace with the girls, and again solicited them to get in the truck. A.G. and S.G. became frightened and ran for home. Clark did an immediate U-turn and pursued them.

The girls ran between houses in the neighborhood. They arrived at their home moments before Clark pulled up in front of their house.

Both girls were in tears and out of breath when they were met by their father, B.G., at the front door. He noticed Clark's truck by the sidewalk. Clark drove away while A.G. and S.G. described Clark's actions to their father.

Two other drivers in the area were concerned with Clark's actions because the girls appeared to have been frightened by him. Mary Loesche called 911 and provided the police with a description of Clark's vehicle and its registration number. Joseph Washington, who saw the girls running from Clark's truck, went to the girls' house and assisted B.G. in his efforts to locate Clark's truck.

B.G., who had a hunting rifle with him, found Clark sitting in his truck at a nearby apartment complex. B.G. attempted to detain Clark, at one point retrieving his rifle from his vehicle, while one of his daughters called the police. However, Clark fled in his truck. B.G.'s attempted pursuit was unsuccessful.

Clark returned to the area and fled again when he saw B.G. and Washington in their vehicles. Clark drove away at very high speeds, followed by B.G. Clark eventually crashed into the side of a taxi when he ran a stop sign.

The taxi driver, Larry Metts, was severely injured with fractured ribs and respiratory problems associated with the trauma, and briefly lost consciousness. Clark did not remain at the scene of the accident.

Officer Ron Bowers, who was responding to the call for help from one of the girls and heard the report on his radio of the hit and run accident, saw Clark driving in his damaged pickup and stopped him. Clark was intoxicated. Clark was arrested.

*The Trial Testimony of P.P., D.R., and R.C.*

At trial, Judge Ralph R. Beistline allowed the testimony of three women, P.P., D.R., and R.C., as relevant evidence on the issue of Clark's intent.

According to P.P.'s testimony, she met Clark at a lounge, the Lamplighter, in Sequim, Washington, on the afternoon of January 1, 1989. At Clark's suggestion, they left in Clark's truck. They stopped in the parking lot of a nearby marina where they both ingested cocaine and Clark drank beer. They went to another bar where they each drank more. After leaving the bar, Clark drove to a remote area. He snorted more cocaine and forced P.P. to snort more as well. Clark coerced her to remove her shirt and bra. He forcibly removed the rest of her clothing. He continued to snort cocaine throughout the assault. He attempted intercourse a number of times, but could not achieve an erection. Clark penetrated P.P. with a dildo, both vaginally and anally. He inserted two one hundred dollar bills into her

vagina. The bills were removed later by an emergency room physician. Clark was convicted of misdemeanor assault in the criminal case that arose from his actions with P.P.

According to D.R.'s testimony, she met Clark at the Surf and Sand, a bar on the Washington coast, on the afternoon of September 17, 1989. Clark was persistent in his efforts to engage her attention, but he left alone after the bartender stopped serving him and forced him to leave. D.R. left about an hour later and was confronted by Clark near her car. She declined his offer to go for a walk on the beach. Clark threw her to the ground and got on top of her. They struggled in the sand until D.R. was able to stun Clark with a punch to the nose and escape. Clark was convicted of misdemeanor assault for his actions toward D.R.

R.C., who worked in a bar in Ketchikan that Clark frequented, walked by Clark on a street after the bar closed on November 12, 1990. Clark followed her to where she was waiting for a cab, grabbed her left breast and told her that he would knock her to the ground and "kick the shit out of [her]" if she tried to run. R.C. managed to signal to a police officer who was driving by as the struggle began. The officer pulled over. Clark fled. Clark was convicted of fourth-degree assault for his actions toward R.C.

Clark argues on appeal that the superior court's decision to admit the testimony of P.P., D.R., and R.C. under Alaska Rule of Evidence 404(b)(1) as relevant evidence of Clark's intent was an abuse of discretion. *See Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980).

A.R.E. 404(b)(1) requires that evidence of prior bad acts have relevance to an issue other than the defendant's propensity to engage in similar misconduct. Even if the evidence is relevant for a purpose other than propensity, such evidence remains subject to exclusion under A.R.E. 403 if its potential for prejudice outweighs its legitimate probative value. *See Jordan v. State,* 895 P.2d 994, 999 (Alaska App.1995).

The evidence from those three incidents, admitted as evidence of Clark's intent, established that Clark had the character or propensity to engage in physically and sexually assaultive behavior that is both violent and aggressive with no consideration for the victim's consent.

■ "The theory upon which evidence of other crimes is admissible on [the issue of intent] under Rule 404(b) is that its use on the mental element of the offense does not require an inference as to the character of the accused or as to his conduct." 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5242, at 487–88 (1978) (hereinafter Wright & Graham). *See generally, Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Intent is one of the bases for admissibility expressly listed in A.R.E. 404(b) and is thus clearly recognized under Alaska law. Because the admission of evidence of other misconduct on the issue of intent could permit the admission of evidence so broadly that the basic limitations of the rule would be negated, two limitations are commonly imposed. First, intent must be seriously disputed. *See Freeman v. State,* 486 P.2d 967, 977 (Alaska 1971). Second, the evidence of other misconduct must be similar to the act of misconduct with which the accused is charged. *See* Wright & Graham, § 5242, at 490–92; *Adkinson v. State,* 611 P.2d 528, 532 (Alaska 1980) *cert. denied,* 449 U.S. 876, 101 S.Ct. 219, 66 L.Ed.2d 97 (1980); *Oksoktaruk v. State,* 611 P.2d 521, 524 (Alaska 1980).

■ With respect to the evidence of Clark's three earlier sexual assaults on women, the ultimate question is whether Clark's earlier assaultive behavior merely manifested Clark's proclivity to sexually assault women, or whether those prior assaults occurred under circumstances similar enough to the present case to allow the jury to draw a reasonable inference of Clark's intent when he approached and followed A.G. and S.G.

We recently addressed this same issue in *Smithart v. State,* 946 P.2d 1264 (Alaska App.1997). In *Smithart,* we noted that Evidence Rule 404(b)(1) bars evidence of the defendant's other wrongful acts

if the only relevance of those other wrongful acts is to show that the defendant is a person who, by nature, engages in such

wrongful acts, and if there is no connection between those [other] acts and the episode being litigated other than the assumption that people of a certain character would act the same way on both occasions.

*Smithart*, 946 P.2d at 1271 (footnote omitted). In *Smithart*, we concluded that the State's evidence of other acts was not barred by Evidence Rule 404(b)(1) because the State showed that those acts had a case-specific relevance to the issues being litigated at trial. However, in Clark's case, we conclude that the State failed to demonstrate such relevance.

Viewed in the light most favorable to the State, the disputed evidence showed that Clark had a proclivity to approach and sexually assault women when he was intoxicated by drugs or alcohol. However, if the evidence was offered for this purpose, it would be barred by Rule 404(b)(1). The question, then, is whether the evidence had some other, more case-specific relevance. Examining the facts of this case and the facts of the prior incidents, we conclude that the State failed to demonstrate any other ground of relevance.

■ In one of the three prior incidents, Clark was on a date with his victim—a substantially different circumstance from the present case. In the other two incidents, Clark's behavior was somewhat closer to his behavior in the present case: he apparently chose a victim, waited outside a bar or restaurant for the woman to leave, and then approached and attacked her. However, each of these prior episodes involved adult women—victims dissimilar to the young teenagers in the present case. The only clear ground of relevance that emerges from the three prior incidents is Clark's proclivity to sexually assault women. Offered for this purpose, the evidence was barred by Evidence Rule 404(b)(1). *See Velez v. State*, 762 P.2d 1297, 1304 (Alaska App.1988):

> [T]he state cannot offer evidence that [the defendant] ... had a disposition to force his affections on unwilling women, and then [ask the trier of fact to] infer from that disposition that [the defendant] forced his affections on [the victim in the present case]. Despite its relevance, this evidence

is absolutely precluded [by Evidence Rule 404(b)(1) ].

(In response to *Velez* and similar decisions construing the language of current Rule 404(b)(1), the legislature amended Evidence Rule 404(b) by adding subsections (b)(2) and (b)(3). These provisions authorize the introduction of evidence concerning the defendant's other wrongful acts even though that evidence would otherwise be barred by Rule 404(b)(1). However, the State does not argue that the evidence in Clark's case was admissible under either of these subsections.)

■ We conclude that the testimony of P.P., D.R., and R.C. was erroneously admitted. We further conclude that the admission of this evidence was not harmless error. *See Love v. State*, 457 P.2d 622, 629–31 (Alaska 1969). Thus, Clark's convictions for attempted kidnapping and attempted sexual assault must be reversed.

*Motion to Dismiss Indictment*

Clark moved to dismiss counts I–IV of the indictment in the trial court, the attempted kidnapping and the attempted sexual abuse of A.G. and S.G. Clark argued that the testimony of P.P. and D.R. that was presented to the grand jury was inadmissible evidence of prior bad acts. P.P. and D.R. had each testified that Clark had sexually assaulted them in separate incidents in Washington in 1989. The State argued, and the trial court agreed, that the evidence of Clark's prior bad acts was admissible as evidence of Clark's intent. Clark renews this argument on appeal.

■ The decision to grant or deny a motion to dismiss an indictment is committed to the trial judge's discretion and will not be overturned absent an abuse of discretion. *See Sheldon v. State*, 796 P.2d 831, 834 (Alaska App.1990). However, the presentation of inadmissible evidence to a grand jury will warrant dismissal of an indictment only if the remaining evidence would be insufficient or if "the probative force of that admissible evidence was so weak and the unfair prejudice engendered by the improper evidence was so strong that it appears likely that the improper evidence was the decisive factor in the

grand jury's decision to indict." *Stern v. State*, 827 P.2d 442, 445–46 (Alaska App. 1992) (citations omitted).

■ We ruled above that the testimony of P.P and D.R should not have been admitted at Clark's trial. Therefore, the testimony should not have been admitted at grand jury. In our view, the probative force of the remaining evidence was sufficient to support the indictment, but did not present a strong case. However, the inadmissible evidence from P.P. and D.R. established that Clark was a dangerous offender with a proclivity to sexually assault women. Therefore, we conclude that the evidence from P.P. and D.R. was likely the "decisive factor in the grand jury's decision to indict" on the attempted kidnapping and the attempted sexual abuse counts. *Stern*, 827 P.2d at 446.

■ However, the testimony of P.P. and D.R. at grand jury, though inadmissible, was solely relevant to the attempted kidnapping and attempted sexual abuse charges. The evidence supporting the remaining counts in the indictment was strong. Based on our review of the grand jury proceedings, we conclude that there was no reasonable possibility that the inadmissible evidence from P.P. and D.R. was the decisive factor in the grand jury's decision to indict Clark on the remaining counts of the indictment. Accordingly, the trial court should have dismissed counts I–IV of the indictment, but the other counts survive.

### Judgment of Acquittal

Clark maintains that the trial court erred by denying his motion for judgments of acquittal on the attempted kidnapping charges and the attempted sexual abuse charges. On appeal, he argues that the evidence did not establish a "substantial step" toward the commission of those offenses. (At trial, Clark's attorney argued that the evidence was insufficient to show an intent to restrain or abduct the minors. He does not renew this claim.)

■ To decide a motion for judgment of acquittal based on insufficiency of evidence, we must consider the evidence presented at trial and all of the inferences arising there-from in the light most favorable to the State. Viewing the evidence in this manner, we must determine whether a fair-minded juror exercising reasonable judgment could conclude that the State met its burden of proving guilt beyond a reasonable doubt. *See Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981); *Deal v. State*, 657 P.2d 404, 405 (Alaska App.1983).

■ We conclude from our review of the record that fair-minded people could conclude that Clark had committed a substantial step toward kidnapping and sexually abusing the girls. Clark made contact with the girls, tried to entice them into his vehicle, and continued to pursue them, practically to their doorstep, when they fled. Clark's conduct and its impact on the girls was so disturbing that two separate observers mentioned above, Loesche and Washington, were motivated to take action. In the absence of any other explanation for Clark's behavior, it would be reasonable to conclude that Clark was trying to abduct the girls for sexual purposes.

### The Neubauer Testimony

The trial court also admitted the testimony of Jon Neubauer. Clark maintains that Neubauer's testimony was erroneously admitted.

■ Clark had claimed necessity as an affirmative defense to the charges of first-degree assault, leaving the scene, and third-degree assault, counts V–VII. The rationale behind the defense followed that Clark's acts were the products of fear of B.G., who was screaming at him and wielding a rifle. In order to rebut the claim of necessity, the State introduced Neubauer's testimony about a 1991 incident in which he had confronted Clark with a rifle when he found Clark hiding in his furnace room early one morning. In that incident, Clark struggled with Neubauer, despite his weapon, until police arrived. The State argued for the admissibility of this evidence under Evidence Rule 404(b)(1).

The evidence was offered to prove Clark's state of mind when he fled the apartment complex. The issue was whether (as the State claimed) Clark fled because he knew

that B.G. was about to arrest him for a serious felony, or (as the defense claimed) Clark fled because he feared that B.G. was about to unlawfully assault him with a firearm.

The State claimed that Clark's struggle with Neubauer showed that Clark was not afraid of people with firearms—thus purportedly casting doubt on Clark's assertion that he fled because he feared he would be harmed by B.G. However, Clark points to a compelling distinction between the Neubauer incident and the present case. In the earlier incident, Clark was cornered in the furnace room and could not escape without a struggle, while in the present case he was able to drive away. Given this difference in the two situations, Clark's behavior with Neubauer seems to have only marginal relevance to interpreting Clark's flight in the present case.

 On the other hand, Neubauer's testimony did not have great potential for prejudice. Taken in the light most damaging to Clark, Neubauer's testimony showed that, four years before the incident in the present case, an intoxicated Clark had trespassed in Neubauer's house and, when confronted, had struggled with Neubauer in an effort to escape. Just as evidence of this incident had little relevance to proving Clark's state of mind in the present case, it also presented little danger of unfair prejudice. The Neubauer incident was quite dissimilar to the present case, and Clark's wrongful act at that time (trespass) was considerably different from, and considerably less serious than, the crimes for which Clark was being tried in the present case. We conclude that there was little or no chance that the jurors would be tempted to convict Clark of the serious felonies charged against him in the present case based on an emotional response to his 1991 trespass at Neubauer's home.

In addition, the trial court gave the jury a limiting instruction prior to Neubauer's testimony. Judge Beistline instructed the jury that the testimony was being presented to show Clark's state of mind when he was confronted with the rifle, and was not to be considered or discussed by the jury for any other purpose. We presume that the jury followed this instruction. *See McDonald v. State,* 872 P.2d 627, 655 (Alaska App.1994).

Given the strict limitations that Judge Beistline placed upon the scope of the evidence in the form of a limiting instruction that was given to the jury prior to the introduction of the evidence, the admission of Neubauer's testimony was not an abuse of the trial court's discretion.

*Jury Instructions on Necessity*

Clark contends that the trial court erred by failing to instruct the jury about the interplay between the necessity instruction and the citizen's arrest instruction, and that as a result the jury verdicts for first-degree assault and failure to remain at the scene of an injury accident were premised on a misunderstanding of the law. Because no objection was made at trial, we review this issue for plain error. *See S.R.D. v. State,* 820 P.2d 1088, 1095 (Alaska App.1991).

The jury was instructed on the defense of necessity as to the first-degree assault, failure to remain at the scene of an injury accident, and third-degree assault charges. The jury was instructed that Clark had to prove that the act charged was done to prevent a significant evil, defined as "harm caused by the unlawful act of another." As the brandishing of a weapon in the manner that B.G. did met the definition of third-degree assault, AS 11.41.220(a)(1)(A), it was an unlawful act unless it was justified. The potential justification in this case was that B.G. believed that Clark had attempted to commit a serious felony and he was trying to apprehend Clark.

For "citizen's arrest," the jury was instructed that

a private person may lawfully use deadly force in these circumstances only when and to the extent the private person reasonably believes the use of deadly force is necessary to make an arrest or terminate the escape or attempted escape from custody of a person who the private person reasonably believes has committed a felony which involved the use of force against a person.

Clark argues that because the jury was not instructed that it was to consider whether he

understood the situation to be a citizen's arrest or an unlawful act by B.G., the jury would have had difficulty finding support for his necessity defense.

However, Clark neglects to mention that the court did instruct on this point. The jury was instructed that if the defendant "reasonably believed that he must act to prevent a significant evil, and also believed that there was no adequate alternative to violating the law, then he had satisfied [the elements of the necessity defense] even if his belief was mistaken, unless the mistake was due solely to voluntary intoxication."

■ To prove the asserted defense of necessity under the facts of this case, Clark was obliged to show (at a minimum) that he drove away from the apartment complex to avoid an unlawful assault. That is, Clark would have to prove that he fled because (1) he reasonably feared that B.G. was going to threaten or harm him with a firearm, and (2) he reasonably believed that B.G.'s threatened use of the firearm was unlawful. The State asserted that, to the extent that B.G. threatened Clark with the use of force, there was nothing unlawful in B.G.'s actions. That is, the State argued that B.G. was authorized to use force (or threaten the use of force) against Clark because B.G. had probable cause to believe that Clark was a fleeing felon.

Clark argues that these competing theories potentially raised a legal difficulty that was not cleared up in the jury instructions. Clark contends that it was possible for the jury to conclude that B.G. was authorized to use force against Clark (because B.G. had probable cause to believe that Clark was a fleeing felon), but at the same time conclude that Clark's actions were justified by necessity. The jury could reach this conclusion if they believed that Clark was, in fact, innocent of wrongdoing and that Clark reasonably believed that B.G. was about to assault him without justification.

In other words, because the legality of B.G.'s actions and the legality of Clark's actions both hinged on their reasonable beliefs about the circumstances, and because a person's belief can be mistaken and still be reasonable, it was theoretically possible that B.G. reasonably (but mistakenly) believed that he was authorized to use force against Clark, but Clark nevertheless reasonably believed that he was authorized to escape an impending assault with a firearm.

In the trial court, Clark did not ask for a clarification of this point. He must therefore show that this deficiency or ambiguity in the jury instructions "obviously create[d] a high likelihood that the jury [would] follow an erroneous theory[,] resulting in a miscarriage of justice." *Nelson v. State*, 927 P.2d 331, 334 (Alaska App.1996) (citation omitted). We conclude that Clark has failed to show plain error. Although Clark has pointed out a theoretical difficulty in the jury instructions, the difficulty remained purely theoretical under the facts of Clark's case.

Given the jury's decision to convict Clark of attempted kidnapping and attempted sexual abuse of a minor, the potential problem in the jury instructions would not have made any difference to the resolution of Clark's case unless the jury concluded (1) that even though Clark was guilty of attempted kidnapping and attempted sexual abuse of a minor, (2) Clark reasonably believed himself to be innocent of wrongdoing, and (3) Clark also reasonably believed that B.G. had no justification for trying to stop Clark from leaving or for approaching him with a firearm. This possibility was remote enough that Clark's trial attorney failed to perceive it. We conclude that there was essentially no possibility that the jury was misled by the jury instructions on this issue.

*DNA Blood Sample*

■ Following entry of judgment, Clark was notified by the Department of Corrections that DNA testing was mandatory. *See* AS 44.41.035. By motion before the trial court, Clark attempted to prohibit the Department from obtaining a blood sample. The court denied his motion.

Clark maintains on appeal that the trial court did not have authority to order a blood sample to be taken from Clark for DNA testing. However, the court did not issue an order for DNA testing, but merely denied Clark's motion. The Department's power to

demand DNA testing arises from statute and is a result of Clark's conviction. Clark's attack on the statute is properly the subject of a direct challenge in a separate proceeding, not as ancillary to this case. The superior court's denial of Clark's post-judgment motion was not error.

### Interest on Restitution Payments

Clark objects on appeal to the order of interest on his restitution payments for damages arising from the vehicular assault conviction. However, Clark did not object to interest in the trial court. Therefore, we review for plain error. *See Potts v. State,* 712 P.2d 385, 390 (Alaska App.1985).

 Interest on restitution payments is permitted. *See Dorris v. State,* 656 P.2d 578, 584 (Alaska App.1982). In addition, the legal rate of interest on a judgment is set by statute. *See* AS 09.30.070(a). As provided in AS 12.55.051(d), a restitution order is enforceable as a civil judgment under AS 09.35. Clark's objection to the superior court's order regarding interest is without merit.

### Conclusion

Clark's convictions for attempted sexual abuse of a minor and attempted kidnapping are REVERSED. If the State elects to retry Clark on these charges, it must secure a new indictment. Clark's convictions for first-degree assault, failure to remain at the scene of an injury accident, and driving while intoxicated are AFFIRMED.