849 So.2d 900 (2001)
Ex parte Earnestine FLETCHER.
(In re Earnestine Fletcher v. State).
1990055.
Supreme Court of Alabama.
March 30, 2001.
*901 R. Scott Anderson, Decatur, for petitioner.
William H. Pryor, Jr., atty. gen., and Sandra J. Stewart, asst. atty. gen., for respondent.
LYONS, Justice.
Earnestine Fletcher was charged with the theft of over $200,000 from the City of Decatur ("the City"), for which she had been formerly employed as a clerk. She pleaded guilty to theft of property in the first degree, a violation of § 13A-8-3(a), Ala.Code 1975.[1] The trial court sentenced Fletcher to 15 years in the penitentiary; it split the sentence, ordering her to serve 48 hours in the county jail, followed by 15 years on probation. In addition, the court ordered her to pay court costs, to pay $50 to the Victims Compensation Fund, and to pay $200,000 in restitution to the City. The court ordered Fletcher to pay the $200,000, plus 12% interest, amortized over 15 years, resulting in a total of $432,061 to be repaid by Fletcher in monthly payments of $2,400.34.
Fletcher moved the trial court to reconsider its restitution order. She argued that under the terms of her plea bargain, she had agreed to pay a total of $200,000 in restitution in monthly payments of $1,112 for 15 years; that she should be required to compensate the City only for the amount of its actual loss; and that the restitution ordered should be based on her ability to pay. The trial court denied Fletcher's motion. She appealed from the restitution order.
The Court of Criminal Appeals, on August 20, 1999, affirmed the restitution order, without an opinion. Fletcher v. State (No. CR-97-1059), 778 So.2d 869 (Ala. Crim.App.1999) (table). We granted certiorari review to determine whether the Court of Criminal Appeals erred in holding that the trial court had properly ordered Fletcher to pay 12% interest on the $200,000 in restitution. We affirm the judgment of the Court of Criminal Appeals in part, reverse it in part, and remand.

I.
Before Fletcher pleaded guilty, she and her attorney had negotiated with the State what is known as a "blind" plea agreement. In essence, Fletcher and the State agreed that she would pay $200,000 in restitution over a period of 15 years, and the State agreed that it would make no recommendation as to her sentence. Her attorney provided the trial court with a document entitled "Restitution Payment Plan for Earnestine Fletcher"; that document showed monthly payments of $1,112 that Fletcher proposed to make from March 1998 through January 2013, plus one final payment in February 2013 of $952, for a total of $200,000. At the hearing on her plea agreement and sentencing, the trial court and the attorneys discussed the plea agreement:
"THE COURT: All right. In this case I understand it's actually a blind plea. There is no recommendation to be made by the State, is that the position of the State; although, you are aware of a proposal being made to the Court and the Court has given its approval to?
"[PROSECUTOR]: As I understand it, Judge, she is putting herself at the mercy of the Court. We do have an agreement as to the amount of restitution. Whatever the sentence may be, *902 we have an agreement that will be set at $200,000.00.
"[DEFENSE COUNSEL]: That's our agreement, Judge."
Fletcher and her attorney signed an "Explanation of Rights and Plea of Guilty" form, commonly known as an Ireland form,[2] in which she agreed to plead guilty to first-degree theft of property, a Class B felony. In signing that form, Fletcher acknowledged that she was aware of her rights and agreed to waive them.
Fletcher testified that she had worked for the City as a clerk at the Decatur City Hall until January 1997 and that one of her job duties had been to receive money that was paid to the City for various reasons. She further testified that during the last several years of her employment with the City, she took an amount of money in excess of $1,000 that she had received on behalf of the City and that she used that money for her own benefit. In addition, she testified that she was 55 years old and was employed full-time by a local merchant. After Fletcher and her attorney spoke in support of her request for probation, the trial court stated:
"THE COURT: Ms. Fletcher, there are a number of things I want to say about this. It would be very easy for me to send you to prison for a long time because of the intentional nature of this crime and because of the prolonged period over which it occurred, but I'm not going to do that. I'm going to sentence you to a term of imprisonment of fifteen years in the State Penitentiary, which is within the statutory range. I'm going to split that sentence and order that you serve forty-eight hours in the Morgan County jail. I'm going to allow you to serve the balance of the sentence on probation. That's a fifteen-year probation and your lawyer has presented to me a plan of restitution. It's a monster to me, and how you're going to do this, I don't know, but as long as you come by the money honestly and don't steal it from somebody else, I'm going to allow you to make payments of restitution on the $200,000.00 which has been submitted as an agreement; and the statutory rate on interest in this State is twelve percent. If you make monthlywhat is the amount of the plan? ...
"[Defense counsel]: $1,112.00.
"THE COURT: $1,112.00 per month. I want you to be very very clear in understanding what I'm telling you. Allowing you to stay on probation is conditioned on these payments being made monthly and timely. There are a number of factors that go into that decision that I considered.... The factors ... that I have to weigh are what is an appropriate punishment, as well as what are the rights of the victim. I firmly believe that I have the rights of the citizens of Decatur to look after as well, and I want them to be paid back. That's a primary factor in my decision. Without an opportunity or without a promise and assurance from you and your lawyer that this restitution is going to be paid, I would send you to prison, and I still may if you let me down. To coin a phrase that is popular that came out of some movie, `show me the money.' I want the money back, and I can't be more clear about that. I want the City of Decatur to have the money back and I want them to be paid interest money in accordance with the statute. As long as you make these payments, as long as you report to the probation officer timely *903 and stay out of trouble, do what the probation officer says, I'm willing to give you the opportunity....
"....
"THE COURT: If I'm here or whoever succeeds me if I'm not, my orders will be clear and they will be perfectly within their right to revoke your probation on this payment. When I looked at your case, it's not your record that would make me want to send you to prison. I guess it's just the nature of this offense. There are a number of folks that I have had to send to the penitentiary previously who were guilty of theft of property in the first degree; some of them for amounts less than yours, but the distinction with you is that you came, not only admitting your guilt, but repentant; the fact that you were not necessarily under investigation and came forward. That is very significant in this decision. I want you to know that, and for that reason, I'm going to take what I think, frankly, is not the easy course and grant the probation and I wish you well. I hope you find gainful employment and pay this back quicker. I haven't borrowed any money lately, but I would hope you could find a better interest rate than twelve percent.... I want you ... to be on probation for fifteen years. If I don't do it that way, the end of your probation is five years and you will never get it paid back in five years. You may and I hope you do, but I don't foresee how you would do it. This is about as steep a mountain as I think one can climb. That's my order, and I wish you well."
At some point after the hearing, the trial court apparently asked Fletcher's attorney to recalculate a 15-year restitution plan that included 12% interest on $200,000. By that plan, Fletcher would need to make monthly payments of $2,400.34 for 15 years. Fletcher then filed what she called a "motion to reconsider," in which she asked the trial court "to reconsider its sentencing order ... regarding the payment of restitution." She stated, in pertinent part:
"1. That on February 5, 1998, the Defendant appeared before this Honorable Court and entered a plea of guilt[y] to the charge of theft in the first degree.
"2. That this plea was blind in nature in that the only agreement Defendant had with the State was the entering of a plea to the charge of Theft I and setting restitution in the amount of $200,000.00.
"3. In [regard] to the payment of restitution, the Defendant, through her attorney, submitted to the Court a payment schedule wherein Defendant was planning to pay $1,112.00 per month for 180 months over 15 years....
"4. That the Court on February 5, 1998, accepted the Defendant's plea of guilt[y] and sentenced the Defendant to 15 years in prison. However, the Court split that sentence and ordered the Defendant to serve 48 hours in the Morgan County Jail and to serve the remainder of the sentence on 15 [years'] probation.
"5. Further, as a condition of probation, the Court ordered the Defendant to pay restitution in the amount of $200,000.00. In regard to this restitution the Court accepted the Defendant's payment plan, but, in addition to these monthly payments ordered the Defendant to pay an additional 12% interest on that amount.
"6. At a 12% rate of interest the Defendant would be required to make 180 monthly payments of $2,400.34....
"....
"10. In order to pay restitution in the Court ordered amount of $2,400.34 alone the Defendant would be required to earn a gross income of $40,005.66 per year or $3,333.80 per month. With her *904 basic living expenses costing $800.00 per month and a court ordered restitution payment per month of $2,400.34, Defendant would have to earn a gross income of approximately $53,339.00 per year or $4,444.91 per month. The Defendant does not now have nor has she ever had the ability or the opportunity to earn this amount of money.
"11. The Defendant contends that the victim's ... actual loss was $200,000.00, the amount [at] which the Defendant agreed restitution should be set. If Defendant made monthly payments on $200,000.00 at 12% interest for 15 years, she would pay more than $432,000.00. Further, the City of Decatur is very stable financially and was not financially impaired as a result of the Defendant's act. Therefore, the Defendant should only be ordered to pay the amount of the victim's actual loss and be required to make restitution in an amount which is reasonably and realistically based upon her ability to pay."
Fletcher filed with her motion an affidavit that stated:
"I am currently employed with a local merchant and my rate of pay is $6.00 per hour. I currently work 40-45 hours per week, but I anticipate that I will be given the opportunity to work up to 60 hours per week in the very near future. If I do work 60 hours per week, my net income would be approximately $13,500.00 per year or approximately $1,125.00 per month.
"I incur certain living expenses each month as follows:

"Housing $217.00
"Groceries $200.00
"Gas $ 50.00
"Power $150.00
"Telephone $ 35.00
"Unexpected and
 misc. expenses $150.00
"Church donations $100.00
 _______
"Total $902.00

"If I stopped donating money to my church, my living expenses would be reduced to approximately $800.00 per month.
"I did not graduate high school, but did obtain my GED. I also have completed two or three college courses in accounting and bookkeeping. Prior to being employed with the City of Decatur, I worked at several dry cleaners and for Sears. I made minimum wages or slightly more than minimum wages in these jobs. When I was employed by the City of Decatur I made a gross income of slightly more than $28,000.00 at the time I resigned.
"I see no way possible that I could make restitution payments of $2,400.00 per month. In order to make these payments I would have to work approximately 18.5 hours per day seven days per week and would still have no money left over on which to survive.
"I have plans to marry soon. My future husband has a job wherein he earns enough money to support both of us. His income would allow me to work and pay, as best I could, this restitution. However, under no circumstances would I be able to ever afford $2,400.00 per month as ordered by the Court.
"I do not own anything that is valuable enough to secure a mortgage or a note which would enable me to pay this restitution. I am going to have to work and pay it from the income I earn."
The trial court denied Fletcher's motion, with an order stating:
"1. The defendant in the above styled cause entered a plea of guilty to theft of property in the first degree on February 5, 1998. At the time of the theft, the defendant was employed by *905 the City of Decatur, Alabama. The defendant had admitted stealing money from the City of Decatur over a period of years and was unsure of the exact amount of the money she admitted stealing.
"2. Prior to the plea of guilty on February 5, 1998, the defendant's attorney and J. Patrick Lamb, Assistant District Attorney, the prosecutor to whom this case was assigned, met with the undersigned Circuit Judge in chambers, but off the record, to discuss certain aspects of the trial of the case and also possible settlement by plea bargain. The prosecution and the defendant agreed that the defendant would enter a plea of guilty to the charge of theft in the first degree and set the restitution in the amount of $200,000.00. There was no agreement nor was there any recommendation made by the State regarding a sentence, probation, or the method of payment for the restitution.
"3. The Court made it known to the attorneys that this is the type of crime which the court felt warranted prison time, and upon such a plea would consider probation only if the defendant would submit to the Court a payment plan for the restitution which the defendant could make. The Court made it perfectly clear to the attorneys for the defendant and the prosecution that any order of restitution would include interest at a rate of twelve percent, which is the statutory rate for interest on judgments, and that restitution orders carried the same effect as did civil judgments, therefore any payment schedule must include payment of twelve percent interest from the date of the sentence. The defendant's attorney was instructed by the Court to submit to the Court a schedule of payments in compliance with the Court's instructions.
"4. A payment schedule was submitted to the Court showing payments over a fifteen year period at $1,112.00 per month. The Court relied on the computation made by the attorney for the defendant and scheduled a date to accept the defendant's plea of guilty. Said hearing was conducted on February 5, 1998.
"5. During the sentencing hearing on February 5, 1998, it became apparent that the payment plan submitted to the Court by the defendant's attorney failed to include interest. The inclusion of the twelve percent interest was made clear to the defendant's attorney from the beginning and the Court instructed the defendant's attorney to recalculate the monthly payment to be made by the defendant.
"6. There were a number of factors that went into the decision made by the Court at the sentencing hearing. Even though the Court believes the defendant is not a danger to the community, has no prior criminal history, and voluntarily surrendered to authorities prior to becoming a suspect in the case, the Court would not have under any circumstances granted probation to this defendant but for the assurances to the Court that she was willing and capable of satisfying the restitution order in the amount of $200,000.00 plus interest at a rate of twelve percent per annum.
"Therefore, the Court DENIES the defendant's motion to reconsider its previous order regarding restitution. The Court further gives written notice to the defendant by virtue of this order that failure to timely make the restitution payments as ordered constitutes a direct violation of the defendant's terms and conditions of her probation and will result in a revocation of her probation and the imposition of the defendant's remaining sentence."
*906 II.
We first consider whether Fletcher preserved for appellate review the matters she now complains of. The State argues that the proper procedure for Fletcher to secure the relief she seeks would have been for Fletcher to move to withdraw her guilty plea. Because she did not take the proper action, the State argues, she is now barred from complaining about the trial court's imposing the requirement that she pay interest on the $200,000 in restitution. The Court of Criminal Appeals agreed with the State, concluding that Fletcher should have moved in the trial court to withdraw her guilty plea, so that the parties could be returned to the "status quo" as it existed before the trial court accepted her plea. We disagree.
Both this Court and the Court of Criminal Appeals have reviewed a defendant's arguments concerning the restitution aspect of a sentencing order, without the defendant's having withdrawn his or her guilty plea. See, e.g., Ex parte Clare, 456 So.2d 357 (Ala.1984); W.D.J. v. State, 785 So.2d 385 (Ala.Crim.App.1998), rev'd on other grounds, 785 So.2d 390 (Ala.2000); Culp v. State, 710 So.2d 1357 (Ala.Crim. App.1996), cert. denied, 710 So.2d 1361 (Ala.1998); D.J.W. v. State, 705 So.2d 521 (Ala.Crim.App.1996); Gladden v. State, 644 So.2d 1267 (Ala.Crim.App.1993). Both this Court and the Court of Criminal Appeals have specifically stated that a postconviction motion is an appropriate method for bringing the defendant's dissatisfaction with the restitution award to the attention of the trial court and that such a motion is sufficient to preserve for appellate review issues concerning the restitution award. In Ex parte Clare, this Court stated:
"The State contends that the restitution issue was not preserved for appeal by defense counsel, because no objection was made, as is authorized by Code 1975, § 15-18-69 (1982 Repl.Vol.). We dismiss this argument because the nature of this particular restitution hearing did not allow for objections, as there was no testimony from witnesses. Defendant's counsel made known to the court his disagreement with the State concerning the amount of restitution, and this was enough in this instance to preserve the issue for review."
456 So.2d at 359. In Gladden, the Court of Criminal Appeals said:
"The only issue the appellant raises on appeal is whether the trial court erred in setting the amount of restitution at $1,000,000. The state initially argues that this issue was not preserved for appeal because no objection was made at sentencing. The court, however, did not fix the amount of restitution at sentencing. At the sentencing hearing, defense counsel stated, `At this time Your Honor, we have nothing further to say, pending the assessment of restitution. It depends on what moneys are going to be assessed by the Court.' After the amount of restitution was set by the court, defense counsel raised this issue in his motion to reconsider. This is sufficient to preserve this issue for appeal. Ex parte Clare, 456 So.2d 357 (Ala.1984)."
644 So.2d at 1268.
After reviewing the transcript of Fletcher's sentencing hearing, her motion to reconsider, and the trial court's order denying that motion, we find it clear that Fletcher's dissatisfaction with the amount of restitution ordered by the trial court arose after the court had held the sentencing hearing. Although the trial court stated at the hearing that it intended for Fletcher to pay interest on the restitution award, it seemed to embrace the monthly-payment schedule Fletcher's counsel had submitted to the court. According to the *907 trial court's order, it was not until after the hearing that the court asked Fletcher's counsel to recompute her restitution payments to include 12% interest for 15 years. At that point, Fletcher filed her motion for reconsideration. Accordingly, we conclude that Fletcher's motion was sufficient to preserve the alleged error for appellate review.

III.
We affirm that aspect of the Court of Criminal Appeals' judgment holding that Fletcher is not entitled to enforce what she understood to be an agreement that the total amount of restitution she was to pay would be no more than $200,000. A defendant is not entitled to the specific enforcement of her understanding of a plea agreement. Ex parte Yarber, 437 So.2d 1330 (Ala.1983); Joiner v. State, 625 So.2d 1173 (Ala.Crim.App. 1993).

IV.
We now address a question of first impression in this Statewhether a trial court can order a defendant to pay interest on an amount ordered as restitution. Although we have not addressed this question, the courts in several of our sister states have. Most of those courts have answered the question in the affirmative.[3] See Clark v. State, 953 P.2d 159 (Alaska App.1998); Valenzuela v. People, 893 P.2d 97 (Colo.1995); Ebaugh v. State, 623 So.2d 844 (Fla.App.1993); Patrick v. State, 184 Ga.App. 260, 361 S.E.2d 251 (1987); State v. Reynolds, 772 So.2d 128 (La.App.2000); People v. Law, 459 Mich. 419, 591 N.W.2d 20 (1999); State v. Brewer, 296 Mont. 453, 989 P.2d 407 (1999); State v. Jensen, 124 N.M. 726, 955 P.2d 195 (N.M.App.), cert. denied, 124 N.M. 311, 950 P.2d 284 (N.M. 1997); State v. Meyers, 571 N.W.2d 847 (S.D.1997); Rodriguez v. State, 710 S.W.2d 167 (Tex.App.San Antonio 1986). Other courts have answered in the negative. See State v. Foy, 176 Ariz. 166, 859 P.2d 789 (Ariz.App.1993); People v. Hart, 65 Cal. App.4th 902, 76 Cal.Rptr.2d 837 (1998); State v. Akers, 435 N.W.2d 332 (Iowa 1989); State v. Dickenson, 68 Or.App. 283, 680 P.2d 1028 (1984); State v. Hufford, 186 Wis.2d 461, 522 N.W.2d 26 (Wis.App.1994). See generally George Blum, Annotation, Measure and Elements of Restitution to Which Victim Is Entitled Under State Criminal Statute, 15 A.L.R. 5th 391, § 45j (1993). We conclude that the better-reasoned approach allows the imposition of interest on restitution awards.
In Reynolds, the Louisiana Court of Appeal reviewed a trial court's restitution order requiring that a defendant pay restitution of $39,700 "together with legal interest from the date of each theft until paid." 772 So.2d at 129. Louisiana law provides that a defendant placed on probation must pay restitution when a victim has suffered "any direct loss of cash" and that restitution must not exceed "the actual pecuniary loss to the victim." La.Code Crim. Proc. art. 895.1(A). The Louisiana court reasoned: "Interest, being money, is pecuniary. Further, interest is viewed as compensation for the loss of use of one's money." 772 So.2d at 131. The court found no abuse of discretion in the trial court's ordering the defendant to pay interest on the restitution ordered.
*908 In Brewer, the Supreme Court of Montana noted that the issue whether interest could properly be applied to restitution was one of first impression for that court. Montana law, like Kentucky law, requires a defendant to make "full restitution" for a victim's "pecuniary" or economic loss. Mont.Code, § 46-18-241 (1997). Included in the definition of "pecuniary loss" are "all special damages ... that a person could recover against the offender in a civil action." Mont.Code, § 46-18-243 (1997). The Montana court concluded that interest was properly includable on restitution awards, and it affirmed the trial court's imposition of 10% interest on the restitution the defendant was ordered to pay.
In Law, the Supreme Court of Michigan concluded that the term "restitution" was understood in Michigan to include interest. The court noted that Michigan law provided that in determining restitution a trial court must consider "the amount of the loss sustained by any victim." Mich. Comp. Laws, § 780.767(1). The court stated that "because a monetary loss includes the use value of money, i.e., interest," the statute's focus on the "loss sustained by any victim" indicated that "interest is a legitimate element of monetary restitution." 459 Mich. at 424, 591 N.W.2d at 22. The court further quoted a tentative draft of the Restatement (Second) of Restitution, saying that draft was in accord with its view: "`A judgment or order for restitution will, at the claimant's instance, include an award of an amount as interest required to prevent unjust enrichment of the defendant.' " 459 Mich. at 425, 591 N.W.2d at 23 (quoting Restatement (Second) of Restitution (tentative draft), § 28, p. 216).
Alabama law applicable to the imposition of restitution is similar to the law we have discussed above from other states. The Alabama Restitution to Victims of Crimes Act ("ARVCA") is codified at §§ 15-18-65 to -78, Ala.Code 1975. Section 15-18-65 reads:
"The Legislature hereby finds, declares and determines that it is essential to be fair and impartial in the administration of justice, that all perpetrators of criminal activity or conduct be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof. The provisions of this article shall be construed so as to accomplish this purpose and to promote the same which shall be the public policy of this state."
(Emphasis added.) The ARVCA defines the term "pecuniary damages," at § 15-18-66(2):
"All special damages which a person shall recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities; the term shall include, but not be limited to the money or other equivalent of property taken, broken, destroyed, or otherwise used or harmed and losses such as travel, medical, dental or burial expenses and wages including but not limited to wages lost as a result of court appearances."
This Court has defined "special damages" in a civil context as those that "flow naturally, but not necessarily, from the wrongful act." Crommelin v. Montgomery Indep. Telecasters, Inc., 280 Ala. 391, 394, 194 So.2d 548, 551 (1967).
In affirming the trial court's restitution order, the Court of Criminal Appeals noted in its unpublished memorandum that it had previously held in Strough v. State, 501 So.2d 488, 491 (Ala.Crim.App.1986), that § 15-18-65, "by reference to the pertinent Alabama civil law, permits a victim to recover all reasonable expenses which are incurred due to the defendant's wrongful *909 conduct." The Court of Criminal Appeals then concluded that a logical construction of § 15-18-65 is that interest on a restitution order would be permitted and at times would be necessary to fully compensate victims for their pecuniary losses. The court held: "The trial court was authorized to impose upon Fletcher a duty to pay the City interest when ordering her to make restitution, in order to fully compensate the City for all direct and indirect pecuniary losses resulting from her wrongful conduct." We affirm that aspect of the Court of Criminal Appeals' judgment.
Our conclusion that in a criminal case the trial court has the authority to impose interest on a restitution award is strengthened by the fact that § 15-18-78 gives such an award the force and effect of a civil judgment. Section 15-18-78 states:
"(a) A restitution order in a criminal case shall be a final judgment and have all the force and effect of a final judgment in a civil action under the laws of the State of Alabama. The victim on whose behalf restitution is ordered ... shall be entitled to all the rights and remedies to which a plaintiff would be entitled in a civil action under the laws of this state as well as any other right or remedy pertaining to such restitution order as may be provided by law.
"(b) The provisions of this section shall be read and deemed in pari materia with other provisions of law. Provided however, the provisions of this section are cumulative and shall not be construed so as to deprive any victim of any other remedy or relief to which a victim may now or hereafter be entitled pursuant to law."
Section 15-18-78 also compels us to conclude that the trial court correctly imposed a 12% rate of interest on Fletcher's restitution. Section 8-8-10 requires that a civil judgment bear interest at a rate of 12% from the date of entry. Nevertheless, a trial court must not only give effect to the incorporation of § 8-8-10 according to the clear terms of § 15-18-78, but it must also adhere to the provisions of § 15-18-68 and Rule 26.11 (discussed infra, in Part V), requiring that a restitution award be tailored to a defendant's ability to pay. In applying those provisions, the trial court must take into account the effect of 12% interest per annum in calculating a sum for the restitution principal that a defendant should be required to pay over a period of time.

V.
Finally, we address Fletcher's argument that the trial court, in increasing from $1,112 to $2,400 the monthly payments required of a 55-year-old woman employed in a local retail store, erred in imposing an interest rate upon her that resulted in monthly restitution payments that were beyond her ability to pay. Although a trial court is vested with wide discretion in fashioning a restitution order, that discretion must be guided by the applicable Rules of Criminal Procedure and the restitution statutes. "While these provisions are not mandatory, they do reflect the general intention of the Alabama Supreme Court and the Alabama legislature that in fashioning a restitution order the trial court should make it reasonable and realistic based upon the defendant's ability to pay." Moore v. State, 706 So.2d 265, 272 (Ala.Crim.App.1996). The ARVCA defines "restitution" in § 15-18-66(3) as the "[f]ull, partial or nominal payment of pecuniary damages to the victim or to its equivalent in services performed or work or labor done for the benefit of the victim as determined by the court of record." Rule 26.11, Ala. R.Crim. P., provides:
"(a) Imposition of Restitution. Restitution should be ordered in all cases *910 where a victim has been injured or damaged. The financial resources and obligations of the defendant and the burden that payment of restitution will impose should be considered in determining how much restitution is to be paid or collected, i.e., whether to be paid by installments and what length of time should be given for payment."
The ARVCA provides further guidance in § 15-18-68:
"In determining the manner, method or amount of restitution to be ordered the court may take into consideration the following:
"(1) The financial resources of the defendant and the victim and the burden that the manner or method of restitution will impose upon the victim or the defendant;
"(2) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court;
"(3) The anticipated rehabilitative effect on the defendant regarding the manner of restitution or the method of payment;
"(4) Any burden or hardship upon the victim as a direct or indirect result of the defendant's criminal acts;
"(5) The mental, physical and financial well being of the victim."
In Moore, the Court of Criminal Appeals addressed a situation similar to Fletcher's in that the trial court had ordered Moore to pay restitution in an amount that clearly exceeded his ability to pay. The Court of Criminal Appeals stated:
"[T]he trial court ordered Moore to pay the restitution in monthly installment payments of $2000. The record before us contains ample evidence that this amount is far beyond Moore's financial means. Because the payment of this amount is a term of Moore's probation, an inability to pay that amount would negatively affect Moore's ability to meet the terms of his probation.
"This court must have, on the record, the trial court's specific findings and the specific underlying facts and circumstances thereof that led the trial court to grant restitution as to each claimfacts deduced from legal evidence that support the trial court's finding that each amount awarded is for (1) damages recoverable under the Alabama Restitution to Victims of Crimes Act and (2) that were proximately caused by Moore's criminal activity. Similarly, we need an explanation on the record of why the trial court ordered monthly payments of $2000 when the record before this court shows that that amount would clearly exceed Moore's financial ability. We find that the record needs to be supplemented before we can determine whether the trial court abused its discretion in the amount and manner of restitution."
706 So.2d at 268-69. See also W.D.J., supra, and Culp, supra.
Fletcher had one hearing, at which the trial court accepted her guilty plea, sentenced her, and imposed a restitution order. As we have previously stated, Fletcher's objection to the terms of the restitution ordered by the court came about after the trial court had ordered her counsel to recompute the monthly-payment schedule to include the payment of 12% interest. The record does not indicate that the trial court held a hearing after Fletcher moved for a reconsideration; therefore, the record contains no explanation as to why the trial court required Fletcher to make monthly payments that the record indicates are far beyond her financial means. Section 15-18-67, a part of the ARVCA, provides *911 that a defendant is entitled to a restitution hearing. Section 15-18-69 explains what is required at such a hearing:
"At such restitution hearings, the defendant, the victim, the district attorney, or other interested party may object to the imposition, amount or distribution of restitution or the manner or method thereof and the court shall allow all such objections to be heard and preserved as a matter of record. The court shall thereafter enter its order upon the record stating its findings and the underlying facts and circumstances thereof."
We reverse that aspect of the judgment of the Court of Criminal Appeals affirming the amount of restitution and the method of its payment, and we remand the cause for the Court of Criminal Appeals to instruct the trial court to hold any further proceedings and to enter any supplemental orders that are necessary in order for the trial court to comply with the ARVCA in a manner consistent with this opinion.

VI.
We affirm the judgment of the Court of Criminal Appeals insofar as it holds that the trial court properly refused to specifically enforce Fletcher's understanding of the plea agreement and holds that the trial court properly required Fletcher to pay interest upon the principal amount to be paid as restitution. We further hold that the trial court correctly imposed an interest rate of 12%. In all other respects, we reverse the judgment of the Court of Criminal Appeals and remand the cause for that court to order further proceedings pursuant to the instructions given in Parts IV and V above.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MOORE, C.J., and HOUSTON, SEE, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
BROWN, J., concurs in part and dissents in part.
BROWN, Justice (concurring in part and dissenting in part).
I concur in Part III, holding that Fletcher is not entitled to enforce what she says she understood to be an agreement that the total amount of restitution would be no more that $200,000, and I concur in Part IV, holding that the trial court, when ordering Fletcher to pay restitution, was authorized to impose a duty to pay interest. However, I cannot join, and therefore respectfully dissent from, Parts II and V, which effectively allow Fletcher to retain the considerable benefits of her guilty plea while pleading poverty as a means of escaping her own obligations under the plea.
While the majority opinion states that Fletcher is not entitled to specific performance of the terms of her guilty plea as she claimed to understand them, the effect of the majority opinion is to force the trial court to accept a plea under terms the trial court would not have accepted in the first instanceterms more favorable to Fletcher than those the trial court was willing to accept. The Court of Criminal Appeals correctly stated in its unpublished memorandum:
"It is well settled that where there is a question as to the existence and terms of a plea agreement, the trial court is in the best position to ascertain the facts and to determine the intent of the parties. Kresler v. State, 462 So.2d 785, 789 (Ala.Crim.App.1984); see also Fuller v. State, 481 So.2d 1178, 1181 (Ala.Crim. App.1985). A trial court's determination regarding the existence and terms of a plea agreement is not readily disturbed on appellate review. Ex parte Clay, 562 *912 So.2d 1307, 1309 (Ala.1990); see also Ex parte Swain, 527 So.2d 1279 (Ala.1988).
"Here, the trial court found that there was no agreement nor was there any recommendation made by the State regarding Fletcher's sentence, probation, or the method of payment for the restitution. The trial court further found that it was the understanding of the parties, including Fletcher's attorney, that any order of restitution would include interest at a rate of 12 percent per annum and that any payment schedule must include payment of such interest. Finally, the trial court stated that it would not have under the circumstances granted probation to Fletcher but for the assurances to the court that she was willing and capable of satisfying the restitution order in the amount of $200,000 plus interest. We find no abuse of discretion in the trial court's determination of the terms upon which Fletcher's guilty plea was entered.
"Although the trial court's determination in this regard may appear to place an onerous burden upon Fletcher with respect to the monthly payments for which she is obligated, it does not lie with Fletcher to seek, as she does, to take advantage of the obvious benefits bestowed upon her by the court's acceptance of her guilty plea (i.e., a split sentence with probation and only 48 hours to be served in confinement) and to seek specific performance of an alleged plea agreement under terms as only she claims to have understood them. As the State correctly argues in its brief to this court, if Fletcher believed that her plea was entered without a full understanding of her obligations under the restitution order or that the trial court, in ordering her to pay interest, had failed to effect the terms of her alleged agreement with the State concerning restitution, Fletcher should have moved to withdraw her guilty plea in the trial court, allowing the parties to be returned to the status quo existing before her plea was accepted by the trial court. Fletcher chose not to move to withdraw her guilty plea; instead she seeks to have the trial court require her to pay only the restitution she claims she is able to payeven though the trial court found that all parties understood that Fletcher, in pleading guilty, would be obligated to pay interest to her victim, and even though the trial court stated that it would not have granted probation to Fletcher but for the assurances to the court that she was willing and capable of satisfying the restitution order in the amount of $200,000 plus interest. Fletcher is not entitled to the relief she seeks."
Fletcher v. State (No. CR-97-1059) 778 So.2d 869 (Ala.Crim.App.1999) (table).
If Fletcher truly entered her guilty plea without a full understanding of her potential obligations as they might be imposed by the trial courtif there was no meeting of the mindsthen she should have sought to withdraw her plea. Although she did not do this, she is now, nevertheless, being allowed to dictate the terms of her plea.
As a final note, because this case is being remanded for further proceedings on the question of the amount of restitution Fletcher can pay and the method of its payment, I would recommend that the court inquire into a particular matter that is relevant to the question of Fletcher's ability to pay restitutionwhat became of the considerable sum of money Fletcher, by entering her guilty plea, admitted to stealing.
NOTES
[1] Count One of the indictment charged Fletcher with the theft of $214,658.17 from the City of Decatur; a second count was dismissed when Fletcher entered her plea as to Count One.
[2] See Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (Ala.Crim.App.1971). See also Rule 14.4, Ala. R.Crim.P.
[3] Several United States Courts of Appeal also have upheld restitution orders that included interest. See, e.g., Virgin Islands v. Davis, 43 F.3d 41 (3d Cir. 1994), cert. denied, 515 U.S. 1123, 115 S.Ct. 2280, 132 L.Ed.2d 283 (1995); United States v. Rochester, 898 F.2d 971 (5th Cir. 1990); United States v. Smith, 944 F.2d 618 (9th Cir.1991), cert. denied, 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992); United States v. Patty, 992 F.2d 1045 (10th Cir. 1993).